Present:  All the Justices

TIMOTHY MARTIN BARRETT

v.  Record No. 060248      OPINION BY JUSTICE ELIZABETH B. LACY
                                    September 15, 2006
VIRGINIA STATE BAR, <u>EX</u> <u>REL.</u>
SECOND DISTRICT COMMITTEE

           FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
             William N. Alexander, II, William H. Ledbetter, and
                    H. Selwyn Smith, Judges Designate

     Timothy Martin Barrett appeals the imposition of a 30-month suspension of his license to practice law.

     A Subcommittee of the Second District, Section II, of the Virginia State Bar certified three charges of misconduct to the State Bar Disciplinary Board.  Barrett requested a three-judge court and the Virginia State Bar (the Bar) filed a Complaint with that court pursuant to Part 6, § IV, ¶ 13.I.1.a.(1)(b) of the Rules of the Supreme Court consolidating the certifications.  The three-judge court considered the three certified charges in a one-day ore tenus hearing.

     All three certifications were based on actions Barrett took during litigation in which he was a named party and in which he represented himself.  The first certification involved Barrett's divorce proceeding against his wife, Jill Barrett.  In that litigation, Barrett procured a witness subpoena for his former employer, Hayden I. DuBay, alleging DuBay had information regarding his wife's earning capacity.

Barrett sent two letters to DuBay's attorney reciting the expense and inconvenience that DuBay would incur if he had to appear and testify and then offered to release DuBay from the subpoena if DuBay would withdraw a claim for an attorney's lien DuBay had filed against Barrett. The three-judge court found that these actions violated Rules 4.4. and 8.4(b) of the Rules of Professional Conduct.[1]

The second certification also related to the divorce proceeding. At that trial, Barrett called opposing counsel, Martin L. Davis, as an adverse witness because Barrett "ha[d] reason to believe that Mr. Davis and Ms. Barrett have a romantic relationship." When Davis denied the allegations, Barrett abandoned his request to call Davis as a witness. The three-judge court found that Barrett violated Rules 3.1 and 3.4(j) by these actions.[2]

The final certification related to an action a former client, Debra Eller, brought against Barrett and his law firm,

---

[1] Rule 4.4 requires an attorney to respect rights of third parties when representing a client and not "use means that have no purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person," and Rule 8.4(b), states that an attorney is guilty of professional misconduct when he or she "commit[s] a criminal or deliberately wrongful act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer."

[2] Rule 3.1 mandates a lawyer assert only non-frivolous claims, and Rule 3.4(j) precludes a lawyer from asserting a position on behalf of a client that "would serve merely to harass or maliciously injure another."

The Injury Law Institute of Virginia, PLC, in which Eller alleged negligence and malpractice based on Barrett's failure to file her personal injury lawsuit prior to the expiration of the statute of limitations. Barrett filed a special plea of immunity claiming that he was immune from liability because he practiced as a professional limited company. Eller's counsel filed a response citing the statutory provisions that specifically affirm the personal liability of attorneys who are members of professional limited companies. Barrett declined to withdraw his plea until the trial court convened to hear the motion. The three-judge court held that these actions constituted a violation of Rules 1.1 and 3.1 of the Rules of Professional Conduct.[3]

The three-judge court issued an opinion and final order imposing a 30-month suspension of Barrett's license to practice law based on these violations. Barrett assigns seventeen errors to the rulings of the three-judge court.

DEMURRER

First, Barrett claims that the three-judge court erred in dismissing the demurrer he filed in response to the Bar's Complaint. The three-judge court dismissed Barrett's demurrer holding that the Rules governing these proceedings contained

---

[3] Rule 1.1 requires a lawyer to "provide competent representation to a client [including] legal knowledge, skill, thoroughness and preparation."

no provision for a demurrer and, in any event, the demurrer failed on the merits because the complaint and accompanying certifications sufficiently informed Barrett of the charges against him. The three-judge court was correct in concluding that the Rules applicable to these proceedings do not authorize a reviewing body to dismiss a complaint against a lawyer on demurrer. <u>See</u> Va. Sup. Ct. R., Part 6, § IV, ¶ 13(I)(1). Barrett does not directly dispute this conclusion but argues that the failure to allow such a challenge left him "unable to mount a proper defense in violation of his rights to due process of law." The record does not support Barrett's position.

The certification listed the specific acts that were the basis for the alleged Rule violations. Furthermore, as required by the Rules, Barrett received a copy of the investigative report considered by the Subcommittee when it referred the case to the three-judge panel. Va. Sup. Ct. R., Part 6, § IV, ¶ 13(D)(1)(b). This information was sufficient to put Barrett on notice of the claims against him.

SUBCOMMITTEE CONFLICT OF INTEREST

Next Barrett claims that the three-judge panel erred in denying his motion to dismiss all charges against him because a member of the subcommittee that certified the charges, Bobby W. Davis, was not impartial. Barrett claims Davis was biased

4

because a former client of Davis' retained Barrett and Barrett forced Davis to complete some work for the client without remuneration.  Barrett raised this issue for the first time before the three-judge court.  That court correctly held that Barrett waived this issue because he did not raise it before the subcommittee, although he was aware of the alleged conflict at that time.

ATTORNEY AS CLIENT

Barrett claims that the three-judge court erred in finding him in violation of Rules 1.1, 3.1, 3.4(j), and 4.4 because these Rules apply only when a lawyer is representing a client, not when a lawyer represents himself in a proceeding.  Barrett argues that the language of Rules 1.1, 3.4(j) and 4.4 specifically limit their application to actions an attorney takes while representing clients. Those Rules state in pertinent part:

Rule 1:1

A lawyer shall provide competent representation to a client.

Rule 3.4(j)

A lawyer shall not:  . . . assert a position . . . or take other action on behalf of a client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another.

Rule 4.4

5

> In representing a client, a lawyer shall not use means that have no purpose other than to embarrass, delay, or burden a third person . . . .

Barrett also maintains that Rule 3.1, although not explicitly referring to representation of a client, was intended to apply only in the course of such representation based on the commentary to that Rule.

Rules of statutory construction provide that language should not be given a literal interpretation if doing so would result in a manifest absurdity. Crawford v. Haddock, 270 Va. 524, 528, 621 S.E.2d 127, 129 (2005). Applying these Rules in the manner Barrett suggests would result in such an absurdity. The Rules of Professional Conduct are designed to insure the integrity and fairness of the legal process. It would be a manifest absurdity and a distortion of these Rules if a lawyer representing himself commits an act that violates the Rules but is able to escape accountability for such violation solely because the lawyer is representing himself. Attorney Grievance Commission v. Alison, 565 A.2d 660, 668 (Md. Ct. App. 1989) (intent and purpose of Maryland's version of Rule 4.4 served only by applying construction that lawyer is representing client when he represents self); Montgomery County Bar Ass'n v. Hecht, 317 A.2d 597, 601-02 (Pa. 1974) (anomalous to condemn lawyer's knowing participation in

6

introduction of perjured testimony by client and condone giving such testimony by lawyer himself).

Furthermore, an attorney who represents himself in a proceeding acts as both lawyer and client. He takes some actions as an attorney, such as filing pleadings, making motions, and examining witnesses, and undertakes others as a client, such as providing testimonial or documentary evidence. See In re Glass, 784 P.2d 1094, 1097 (Ore. 1990)(lawyer appearing in proceeding pro se is own client); In re Morton Allan Segall, 509 N.E.2d 988, 990 (Ill. 1987) ("attorney who is himself a party to the litigation represents himself when he contacts an opposing party"); Pinsky v. Statewide Grievance Committee, 578 A.2d 1075, 1079 (Conn. 1990) (restriction on attorneys contacting represented parties limited to instances where attorney is representing client, not where attorney represents himself).

The three Rules at issue here address acts Barrett took while functioning as an attorney and thus the three-judge panel correctly held that such acts are subject to disciplinary action.

## SUFFICIENCY OF THE EVIDENCE

We turn now to Barrett's contention that the Bar did not establish by clear and convincing evidence that he violated

7

the relevant Rules in any of the circumstances charged.[4]  In reviewing the decision of the three-judge court, we conduct an independent examination of the record, considering the evidence and all reasonable inferences therefrom in the light most favorable to the prevailing party below, and we give the factual findings of the three-judge court substantial weight, viewing them as prima facie correct.  Anthony v. Virginia State Bar, 270 Va. 601, 608-09, 621 S.E.2d 121, 125 (2005). The factual conclusions, while not carrying the weight of a jury verdict, will be sustained unless they are not justified by the evidence or are contrary to law.  Id. at 609, 621 S.E.2d at 125.

### 1.  Witness subpoena for DuBay

Barrett argues that because DuBay had employed Barrett's former wife, Jill, DuBay had information regarding her earning capacity, and he alleged that DuBay would not provide certain employment records.  Therefore, Barrett asserts he issued a lawful subpoena to a material witness and did not engage in actions that had "no purpose other than to embarrass, delay, or burden a third person," Rule 4.4, or reflected "adversely

---

[4] Part 6, Section IV, Paragraph 13, Section (I)(2)(e)(2) of the Rules provides that at a disciplinary hearing before the Bar Disciplinary Board, Bar Counsel must present clear and convincing evidence to prove a violation of the Rules.  Code § 54.1-3935(B) makes this same evidentiary standard applicable to proceedings before a three-judge court.

on the lawyer's honesty, trustworthiness or fitness as a lawyer," Rule 8.4(b).

The record shows that Jill worked for DuBay for a total of approximately 30 hours and was paid $10 an hour. DuBay had provided Jill's attorney with Jill's employment records. He never received a subpoena or written request for those records from Barrett, although he testified he believed that Barrett sought the records from Jill's attorney.

Even though DuBay's information may have been relevant in Barrett's divorce action, Barrett's two letters containing offers to release DuBay from the witness subpoena if DuBay would waive the attorney's lien claim were not designed to secure DuBay's testimony regarding Jill's employment. The clear intent of Barrett's letters was to harass DuBay and compel him to waive the lien. This record provides clear and convincing evidence that Barrett violated both Rules 4.4 and 8.4(b), and the three-judge court did not err in finding such violations.[5]

---

[5] We also reject Barrett's claim that the three-judge court erred in admitting testimony and letters regarding Barrett's interaction with his former client, Wade Bell. Part 6, Section IV, Paragraph 13(E)(3) adopted in three-judge court proceedings pursuant to 54.1-3935(B) sets the evidentiary standard: "evidentiary rulings shall be made favoring receipt into evidence of all reasonably probative evidence to satisfy the ends of justice. The weight given such evidence received shall be commensurate with its evidentiary foundation and likely reliability." Barrett's treatment of Bell bore on the question whether Barrett had committed "a deliberately

9

## 2. Calling Opposing Counsel as a Witness

Barrett argues that the Bar did not establish by clear and convincing evidence that he violated Rules 3.1 and 3.4(j) when he called opposing counsel, Martin Davis, as a witness in the divorce proceeding. These two Rules prohibit an attorney from asserting a position that is frivolous and from taking action designed "merely to harass or maliciously injure another," respectively.

Barrett maintains that he called Davis as a witness because he had a reasonable belief that Davis had a romantic relationship with Jill, Barrett's former wife, and therefore Davis' testimony regarding child rearing would be relevant to the custody issues in the proceeding.

Prior to the hearing, Barrett sent a letter to Davis describing Barrett's perception of a romantic relationship. Davis did not respond to the letter. At trial, Barrett called Davis as a witness stating that he believed Davis had "knowledge as to this matter that is outside of his attorney-client relationship." In response, Davis objected referring to rules that state an attorney cannot continue representation of a client if he is going to be a witness in an adversarial proceeding and claiming that he had no knowledge of matters at

wrongful act that reflects adversely on the lawyer's honesty" in violation of Rule 8.4(b). DuBay had personal knowledge of

issue other than those acquired in the course of his representation of Jill, which were protected by the attorney-client privilege. Barrett then revealed his suspicion of a romantic relationship and stated that if Davis would state on the record that there was no romantic relationship, "I have no reason to talk to him." Davis denied the existence of such a relationship, and Barrett ended his attempt to call Davis as a witness.

The record shows that Barrett's "reasonable belief" of a romantic relationship was based on statements made by his current wife who was his girlfriend at the time of the divorce proceeding. She testified that she considered the interaction between Jill and Davis, which she observed during the divorce proceedings, as "romantic flirtation." Barrett stated that he had concluded "the same thing." Davis testified at the disciplinary proceeding that he and Jill had eaten dinner together once during the divorce proceeding. The tenuous nature of Barrett's suspicions is reflected in Barrett's agreement to drop his request upon Davis' statement denying such a relationship. Barrett made no attempt to challenge Davis' statement nor to disclose to any information that would contradict the denial. The lack of any investigation into the relationship at issue prior to or further inquiry at trial

_____

these dealings; thus, the three-judge court properly admitted

11

reinforces the notion that Barrett had no purpose other than engaging in a frivolous act or harassing Davis. Furthermore, Davis' dinner with Jill was not proof of a "romantic relationship," nor was it shown to have been a factor upon which Barrett relied when he called Davis as a witness.[6]

At trial, the Bar emphasized the extraordinary and disruptive measure of calling an adverse counsel to testify in the middle of a hearing. Under such circumstances counsel generally must cease representation of the client and the client must secure new counsel. See Rule 3:7. Furthermore, the basis of Barrett's actions in this case – an alleged romantic relationship between Davis and his client - impugned the personal and professional reputation of the attorney. Rule 1.7, Comment 11 ("A lawyer's romantic or other intimate personal relationship can also adversely affect representation of a client."). Calling Davis as a witness under these circumstances qualified as action taken to harass or injure another. Accordingly, we conclude that the three-judge court did not err in finding that these actions violated Rules 3.1 and 3.4(j).

3. Pleadings in the Malpractice Litigation

---

this evidence.

[6] Barrett also claimed that his belief was based on statements from his children that their mother had dinner with Davis but these statements were not submitted or admitted as evidence in the proceeding.

The three-judge court concluded that Barrett violated Rule 1.1 and Rule 3.1 by the following acts which occurred in conjunction with the Barrett's representation of Eller and her legal malpractice action against him:  failing to file or settle a lawsuit within the two year statute of limitations period, filing a special plea of immunity that "was not warranted by existing law or the good faith argument for the extension, modification, or reversal of existing law," and failing to read the motion to strike the plea and memorandum in support thereof until the day of the hearing on the motion at which time he withdrew the plea.  Barrett argues that these facts are insufficient to establish by clear and convincing evidence that he violated either Rule.  We agree.

Rule 1.1 requires that a lawyer provide "competent representation" to a client, which requires "legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."  Disciplining an attorney on the basis of incompetent representation under Rule 1.1, as reflected in the commentary, involves attorney performance that extends significantly beyond mere attorney error.  See Motley v. Virginia State Bar, 260 Va. 251, 262-64, 536 S.E.2d 101, 106-07 (2002) (imposing discipline under former DR 6-101 for incompetence when attorney allowed client to sign promissory note to complete a real estate transaction which did not

13

reflect parties' agreement and the consequences of which attorney did not understand).

Whether an attorney is subject to discipline for failing to provide competent representation is a matter decided on a case by case basis. In this case, Barrett admitted that his failure to file or settle the personal injury lawsuit within the limitations period was negligent; nevertheless, such negligence without more is not clear and convincing evidence of incompetence under Rule 1.1. Similarly, discipline of Barrett under Rule 1.1 is not justified based on research that results in the wrong legal conclusion because incorrect legal research alone, although attorney error, is not clear and convincing evidence of incompetence for purposes of that Rule.

Finally, Barrett's failure to read responsive pleadings in a more timely manner and his delay in withdrawing the special plea, while not the preferred way of practicing law, do not support a finding of incompetent representation in this case. Barrett filed his special plea on January 30, 2003; opposing counsel filed the motion to strike and supporting memorandum on February 18; and Barrett withdrew the plea on March 18, the date of the hearing on various motions in the case including the special plea and motion to deny the special plea. The delay itself was less than a month, and Barrett withdrew the plea before the court was required to consider

it.  Accordingly, we conclude that this delay does not provide clear and convincing evidence that Barrett violated Rule 1.1.

We next turn to violations of Rule 3.1.  That rule prohibits a lawyer from advancing a position that is frivolous.[7]  The failure to timely file a lawsuit does not implicate this rule.  Thus, violation of this rule had to be based on the three-judge court's finding that Barrett asserted an erroneous legal position that was not a good faith argument for extension of the law, and that he failed to timely read opposing pleadings and withdraw his special plea.

An erroneous position is not necessarily a frivolous position. In this case, Barrett produced evidence, accepted by the three-judge court, that his position, although erroneous, was based on principles he learned in his law school classes, on legal research he had conducted on the issue, and on a "misunderstanding of the law."  This evidence does not support a finding that filing the special plea was a frivolous act in violation of Rule 3.1.  Compare Barrett v. Virginia State Bar, 269 Va. 583, 596, 611 S.E.2d 375, 382 (2005) (imposing discipline for filing frivolous pleading where attorney moved to strike wife's divorce pleadings solely because of minor

---

[7] Compare Code § 8.01-271.1 allowing sanctions against an attorney who signs a pleading that is not "grounded in fact," "warranted by existing law or a good faith argument" for a change in the law, or filed for an "improper purpose" such as delay, harassment, or increasing the cost of litigation.

15

mistake in wife's legal name, and attorney clearly knew correct name and had himself used multiple versions of it in own motion).

Similarly Barrett's delay in reading opposing counsel's memorandum and refusal to withdraw his special plea at an earlier time do not constitute asserting a position that is frivolous.

In summary, we find that the record does not present clear and convincing evidence that Barrett violated Rules 1.1 and 3.1 when he failed to file or settle a lawsuit within the limitations period, filed a special plea asserting an erroneous legal position, or delayed in reading responsive pleadings and withdrawing the special plea.[8]

CONCLUSION

For the reasons stated, we will affirm that part of the judgment of the three-judge court finding that Barrett's actions in conjunction with his divorce proceeding violated Rules 4.4, 8.4(b), 3.1 and 3.4. We will reverse that part of the judgment of the three-judge court holding that Barrett's actions in conjunction with his representation of Eller and in the legal malpractice action violated Rules 1.1 and 1.3. Consequently, because the 30-month suspension of Barrett's

---

[8] In light of this holding, we need not address Barrett's other challenges to evidence admitted in conjunction with these charges.

16

license to practice law was a single sanction imposed for all violations found by the three-judge court, we will vacate that sanction and remand the case for further consideration of an appropriate sanction for the remaining violations.[9]

<u>Affirmed in part, reversed in part, and remanded.</u>

---

[9] Because the case will be remanded for consideration of an appropriate sanction, we need not address Barrett's remaining challenges regarding the sanction previously imposed.