PRESENT:  All the Justices

WALTER FRANKLIN GREEN, IV
                                        OPINION BY
v.  Record No. 082530        JUSTICE LEROY F. MILLETTE, JR.
                                        JUNE 4, 2009
VIRGINIA STATE BAR


              FROM THE VIRGINIA STATE BAR DISCIPLINARY BOARD

     In this appeal of right, we review an order of the

Virginia State Bar Disciplinary Board (the Board) suspending

the license to practice law of Walter Franklin Green, IV

(Green) for eighteen months.  Finding no error, we will

affirm.

         FACTUAL BACKGROUND AND MATERIAL PROCEEDINGS BELOW

     On May 18, 2006, a duly convened subcommittee of the

Seventh District Committee of the Virginia State Bar (the

Subcommittee) consisting of Steven H. Gordon, lay person,

Samuel R. Walker, Esquire, and Peter C. Burnett, Esquire

considered disciplinary charges against Green.  By letter

dated May 19, 2006, Green was notified that the Subcommittee

had certified four charges against him to the Board.[1]  Green

was also provided copies of the reports of the investigator

for the Virginia State Bar (the Bar), and was notified that he

_____

     [1] VSB Docket Number 06-070-0739 (Kenneth B. Henley, Sr.),
and VSB Docket Number 06-070-2259 (Kristen L. Beavers/Michael
S. Eavey).  The Subcommittee also certified two additional
cases, which were later dismissed and are not the subject of
this appeal.

would receive the Subcommittee Determination (Certification). On May 31, 2007, by letter from Assistant Bar Counsel, Alfred L. Carr (Bar Counsel), Green was provided with a copy of the Certification signed by Samuel R. Walker, Chair Designate of the Seventh District Committee.[2]

Green filed a petition for a writ of prohibition and sought a stay of the disciplinary proceedings in the circuit court, which was denied, and this Court subsequently denied his motion for a stay. Green v. Virginia State Bar, Record No. 080577 (June 6, 2008). Green requested two continuances, which the Board granted. The Board heard the cases on June 27, 2008 and August 22, 2008. James L. Banks, Jr., Esquire, served as Chairman of both Board panels.

At the June hearing, the Bar and Green presented evidence on the matter of Kenneth B. Henley, Sr. (Docket Number 06-070-0739) and the matter of Kristen L. Beavers/Michael S. Eavey (Docket Number 06-070-2259). The hearing extended into the evening, at which time the Board continued it to a later date. On August 22, 2008, the hearing resumed. Three Board members were substituted for the August hearing due to the unavailability of three members who sat in June. Prior to the August hearing, the Clerk of the Disciplinary System provided

---

[2] Green's demand for a three-judge panel pursuant to Code § 54.1-3935 was denied as untimely made.

each of the substituting Board members with a transcript of the June 27, 2008 hearing, as well as a copy of the entire record.

At the conclusion of the Bar's case, Green moved to strike "each and every one of the allegations" against him. Green challenged the presence of the Board members who did not participate in the June hearing. Green further argued that the Board lacked jurisdiction due to the delay between the May 18, 2006 Subcommittee determination of misconduct and the May 31, 2007 Certification. Green contended that the Board's failure to substantially comply with procedural requirements, as mandated by Part 6, § IV, ¶ 13-12, resulted in its loss of jurisdiction.[3] Green also argued that the Bar had not proven any of the alleged misconduct by clear and convincing evidence. The Board overruled Green's motion to strike as to the procedure implemented in substituting Board members, finding it in compliance with the provision now found in Part 6, § IV, ¶ 13-18(Q), and determined that the Board retained jurisdiction, having shown substantial compliance. The Board sustained Green's motion to strike as to certain of the alleged violations of the Rules of Professional Conduct.

_____

[3] The provisions applicable during the proceedings against Green have been reorganized, effective May 1, 2009 in a revised Paragraph 13. No substantive change was made to any

Following the August hearing, the Board concluded that Green violated Rules 1.4(a), 1.4(b), 1.4(c), 1.15(a)(2), and 1.16(d) of the Rules of Professional Conduct.  The Board suspended Green's license to practice law in the Commonwealth for eighteen months.  Green appealed the Board's order (Suspension Order) to this Court.  By Order entered December 12, 2008, we stayed the Suspension Order pending the outcome of the appeal.

At the June and August 2008 hearings (collectively, the hearing), the Board considered the following two cases certified from the May 18, 2006 Subcommittee meeting.

### A.  Matter of Kenneth B. Henley, Sr.
### (Docket Number 06-070-0739)

Green represented Henley on charges of driving under the influence, driving after having been declared a habitual offender, and child neglect.  Henley paid directly to Green $7,500 in cash as an advanced legal fee.  Green described the fee arrangement as a "flat fee" because the majority of his clients did not want to pay an hourly fee over the initial deposit.

At the hearing, Green testified that he did not consider a flat fee to be earned when he received it and that he believed that he made periodic withdrawals at the rate of $250

of the provisions applicable in this case.  For convenience,

per hour from Henley's account as legal services were provided. The Bar, however, introduced as evidence at the hearing its Exhibit #20, Green's client account ledger for Henley, which showed $7,500 received on December 24, 2003, $7,500 charged against the account on December 24, 2003, and thereafter a balance of $0. The ledger also showed numerous dates subsequent to December 24, 2003 with indications of client conferences and court appearances without a concomitant listing of the time expended or charges made to the account. Green did not recall whether he notified Henley when Green withdrew the $7,500 from the trust account.

The Bar investigator testified that Green said he put flat fees in his general or office account. Green's "office's policy [was] that the money would be deposited in the trust account, initially." Green asserted that he performed a monthly reconciliation of the escrow account balance, but Green did not present any evidence that he made a monthly reconciliation of his trust account disbursement journals.

The Board found by clear and convincing evidence that Green received $7,500 on December 24, 2003 and immediately withdrew the money as having been earned based on the flat fee charged when in fact the entire fee had not then been earned.

the current numbering is used in this opinion.

5

The Board determined that Green violated Rule 1.15(a)(2) pertaining to the handling of client funds.

### B. Matter of Kristen L. Beavers/Michael S. Eavey (Docket Number 06-070-2259)

Green represented Beavers and Eavey in an action against Allstate Insurance Company (Allstate) for a claim under an insurance policy covering a vehicle they co-owned. Beavers and Eavey claimed that their vehicle had been either vandalized or stolen.

Eavey's grandmother paid Green $2,500 for the representation against Allstate. At the hearing before the Board, only Eavey testified, as Beavers was ill in June and unavailable in August. Eavey testified that he met with Green only three times for "[m]aybe 10 minutes" over the course of his representation from 2000 to 2006. According to Eavey, Green did not inform him that a warrant in debt was filed against Allstate on his and Beavers' behalf, that in December 2000 there was a court date in the general district court, that the lawsuit was removed to the circuit court, that Allstate had propounded discovery to which Eavey needed to respond, or that Allstate had filed a motion to compel. Eavey also testified that Green did not inform him that Allstate's counsel had scheduled depositions to be taken on four separate dates.

In August 2002, the circuit court to which the case had been removed entered an order for counsel to appear on November 20, 2002 for entry of a pre-trial order and scheduling a trial date. Green did not provide Eavey with the order, and did not appear on November 20, 2002. The circuit court entered an order in December 2002 dismissing the case without prejudice for failure of the parties to appear.

Despite the 2002 dismissal of the lawsuit, in November 2003, Green attempted to negotiate a settlement with Allstate in the amount of $2,500. Allstate responded that the case had been dismissed. Eavey testified that Green did not inform him of the settlement proposal, and Eavey did not authorize settlement. Eavey also testified that he met with Green in November 2003 and demanded a refund of the $2,500, because nothing had been done with his case and it had "been too long." Green told Eavey "to wait that the insurance company puts those funds on hold for five years and then they'll settle."

In December 2005, Beavers and Eavey wrote to Green and demanded a return of their $2,500. At that point in time, five years had elapsed since the case against Allstate had been filed, three years since the case had been dismissed, and two years since Green had attempted to "settle" the case. Green did not refund any of the $2,500 to them. The Board

7

found by clear and convincing evidence that Green violated Rule 1.4(a), (b), and (c), requiring attorney communication with the client, and Rule 1.16(d), concerning termination of an attorney's representation of the client.

Green's disciplinary record was introduced into evidence for the Board's consideration at the August 2008 hearing without objection. The Board imposed an eighteen month suspension, effective August 22, 2008. On October 23, 2008, Green moved to set aside the summary order in the Henley and Beavers/Eavey matters. Green argued that the Board lacked subject matter jurisdiction due to the participation of Grant A. Richardson (Richardson), who had represented Green in prior disciplinary matters, on subcommittees that had certified prior charges against Green. Green also argued that those certifications led to a six month suspension and a forty-five day suspension, imposed in 2007 and reflected on Green's disciplinary record. Green asserted that Richardson's participation on the subcommittees was in violation of the Rules of Professional Conduct concerning conflicts of interest. At oral argument on appeal, Green acknowledged that Richardson last represented him in 1998.

Green's counsel did not discover Richardson's participation on the 2004 and 2005 subcommittees until October 10, 2008. Green had "not complained about those whatsoever

8

until [his counsel] brought it to his attention and [they] discussed it on October the 10th." The Board unanimously decided to overrule the motion to set aside the summary order. On November 17, 2008, Green was served with the Suspension Order entered on November 12, 2008 from which he presently appeals.

## ANALYSIS

Green assigns error to the Board's order based on the following: (1) not dismissing the cases when the Bar mailed the Certification more than one year after the Subcommittee voted to certify charges of misconduct, (2) using a disciplinary record that was void because it contained sanctions imposed by subcommittees on which Green's former attorney participated, (3) improperly allowing substitution of Board members at the August 22, 2008 continuance of the hearing, (4) entering the Suspension Order with the endorsement of a designate of the Chairman of the Board, and (5) finding that Green had violated any of the Rules of Professional Conduct.

## STANDARD OF REVIEW

Under an established standard of review of the Board's decision in a disciplinary proceeding, we conduct an independent examination of the entire record. Pilli v. Virginia State Bar, 269 Va. 391, 396, 611 S.E.2d 389, 391

9

(2005).  We consider the evidence and all reasonable inferences that may be drawn from that evidence in the light most favorable to the Bar, the prevailing party in the Board proceeding.  Id.  We accord the Board's factual findings substantial weight and we view those findings as prima facie correct.  Id.  Although we do not give the Board's conclusions the weight of a jury verdict, we will sustain those conclusions unless they are not justified by a reasonable view of the evidence or are contrary to law.  Id.

1. The Certification was Served One Year and Two Weeks after the Meeting of the Subcommittee that Certified the Charges of Misconduct

Part 6, § IV, ¶ 13-15(E) provides in part that "[i]f a Subcommittee elects to certify a Complaint to the Board, the Subcommittee Chair shall promptly mail a copy of the Certification to the Clerk of the Disciplinary System, Bar Counsel, the Respondent and the Complainant."  Green argues that the Subcommittee's determination was made on May 18, 2006, but the Certification was not promptly mailed in compliance with the provisions of Subsection (G)(4), because the Certification was mailed by Bar Counsel on May 31, 2007.  Although Green notes that Bar Counsel rather than the required Subcommittee Chairman mailed the Certification, the thrust of his argument is that he was prejudiced by the delay.  In arguing prejudice, Green points to the dissent to the

10

Suspension Order, which states, "we believe that a one year and two week delay in notifying [Green] of the charges that arose as early as 2000 . . . can be nothing but prejudicial."

Green argues that witnesses called by the Bar conceded they could not remember events that occurred over eight years before the hearing. Green also argues that the delay between alleged misconduct and a hearing resulted in a much harsher disposition because his disciplinary record was enhanced by other sanctions imposed between the time of misconduct and the hearing.

The Bar argues that although there was a delay between the Subcommittee determination and the mailing of the Certification, Green did not establish that he was prejudiced by the delay. The Bar contends that Green clearly knew of the allegations of misconduct when he was notified by the Bar's May 19, 2006 letter, which contained the Bar's investigative reports of the four charges brought against him. The Bar argues that Green was able to present his case, that Green testified on his own behalf, and did not claim that his memory was impaired by the passage of time. Furthermore, Green presented 64 exhibits in his defense. The Bar also argues that Green only pointed to one witness, Eavey, who, when his memory was refreshed, said "done forgot now. This has been so long ago." But the Bar maintains that Eavey was able to

11

testify in considerable detail about the events in question, and Green does not proffer how he was prejudiced by any lapse in Eavey's memory.

The Bar disagrees that Green was prejudiced by having an enhanced disciplinary record due to the delay. The Bar argues that Green's disciplinary record dates back to 1997 and includes multiple public reprimands and admonitions, in addition to the six month and forty-five day suspensions in 2007. It is the Bar's contention that had the sequence of sanctions been reversed, Green might have received the same or harsher discipline. The Bar asserts that it is speculation as to what the result would have been had this matter been considered before some of the other matters, and therefore Green cannot demonstrate prejudice.

Part 6, § IV, ¶ 13-12(A) provides in part: "Except where [Paragraph 13] provides specific time deadlines, substantial compliance with the provisions hereof shall be sufficient, and no Charge of Misconduct shall be dismissed on the sole ground that any such provision has not been strictly complied with." We have previously considered the prompt mailing provision presently located in Part 6, § IV, ¶ 13-15(E) to be a procedural requirement and found that dismissal of charges because of an eleven month delay in notice of certification was inappropriate when the attorney was unable to demonstrate

12

how such delay caused him prejudice.  Motley v. Virginia State Bar, 260 Va. 251, 258, 536 S.E.2d 101, 104 (2000).  Green has not established how the delay in this case has caused him prejudice.  Green did not claim he was prejudiced in either his own recollection of the events or in his presentation of exhibits.  Green did not demonstrate how Eavey's purported memory difficulties prejudiced him, and in fact, the Bar was more prejudiced than Green by faulty memory of witnesses, resulting in dismissal of multiple charges.  Finally, it was through Green's filing of pleadings with this Court and requests for continuances that the Board hearing was delayed from October 26, 2007 until June 27, 2008.

We have previously admonished the Bar for the untimely performance of certain of its responsibilities for professional regulation in a prior proceeding against Green, and the Court again states its disapproval of the Bar's delay in the certification of ethical complaints from a subcommittee.  See Green v. Virginia State Bar, 274 Va. 775, 786, 652 S.E. 2d 118, 123 (2007).  However, absent a showing of prejudice by the attorney, "[a]ny betrayal of the trust which the attorney is sworn to keep demands appropriate discipline; a delay in prosecution, without more, cannot override this necessity."  In re Williams, 513 A.2d 793, 796 (D.C. 1986).  "If the conduct of a member of the bar

13

disqualifies [the attorney] from the practice of law, it would not be in the public interest to dismiss the disciplinary proceedings for no reason other than the Bar's failure to prosecute [him] with the proper dispatch." Id. at 797 (quoting In re Weinstein, 254 Or. 392, 394, 459 P.2d 548, 549 (1969)). The burden of demonstrating prejudice remains on Green, and he failed to establish how he was prejudiced by the delay in this case.

The record clearly reflects that the public was prejudiced by the lapse of memory of several of the Bar witnesses, which contributed to the dismissal of some of the misconduct charges against Green. Therefore, the Bar operates at its own peril in failing to comply with the same standard of professionalism that it expects from the lawyers it regulates.

2. Board's Consideration of Green's Disciplinary Record

In determining the appropriate sanction, the Board considered Green's disciplinary record, which reflects a six month suspension and a forty-five day suspension resulting from subcommittee certifications that took place in 2004 and 2005. Green's former attorney, Richardson, participated on the subcommittees that certified the charges of misconduct.

Green argues that his disciplinary record was void due to the inclusion of those sanctions, because Richardson was

14

ineligible to participate in subcommittee determinations involving Green. According to Green, Richardson's participation was a conflict of interest, in violation of the Rules of Professional Conduct, and his ineligibility to participate resulted in a lack of a quorum as required by what is now Part 6, § IV, ¶ 13-7(B)-(C). Green therefore argues that any certification by a subcommittee on which Richardson sat is void for lack of subject matter jurisdiction. Thus, Green contends that the Bar should not have been permitted to use his disciplinary record, which reflected sanctions arising out of void certifications, to induce the Subcommittee's certification on May 18, 2006 and, later, to enhance his sanction. Green maintains that the use of his disciplinary record by the Subcommittee should have resulted in dismissal by the Board, and that the resultant Suspension Order is void ab initio.

The Bar argues that Green is alleging an irregularity of procedure, not a lack of subject matter jurisdiction. The Bar cites Barrett v. Virginia State Bar, 272 Va. 260, 634 S.E.2d 341 (2006) for the proposition that an objection to the qualification of subcommittee members must be timely made or it is waived. The Bar also relies on what is now Part 6, § IV, ¶ 13-12(B), which provides that substantial compliance with the procedures of this Paragraph is sufficient, except

"where specific deadlines are provided, such deadlines shall be jurisdictional." Continuing, the Bar argues that the regulations on quorum and qualifications of subcommittee members do not contain specific time deadlines and thus are not jurisdictional.

The Bar contends that any argument regarding Richardson's participation in the prior subcommittees and the inclusion of charges certified by those subcommittees on Green's disciplinary record is waivable, and has been waived by Green. The Bar asserts that Green did not object to Richardson's participation on any subcommittee and did not object to the admission of his disciplinary record in the present case.

We agree with the Bar that this issue does not involve subject matter jurisdiction and has been waived by Green.

We have stated:

> The term jurisdiction embraces several concepts including subject matter jurisdiction, *which is the authority granted through constitution or statute to adjudicate a class of cases or controversies*; territorial jurisdiction, that is, authority over persons, things, or occurrences located in a defined geographic area; notice jurisdiction, or effective notice to a party or if the proceeding is *in rem* seizure of a *res*; and 'the other conditions of fact must exist which are demanded by the unwritten or statute law as the prerequisites of the authority of the court to proceed to judgment or decree.'

Morrison v. Bestler, 239 Va. 166, 169, 387 S.E.2d 753, 755 (1990) (quoting Farant Investment Corp. v. Francis, 138 Va.

16

417, 427-28, 122 S.E.2d 141, 144 (1924)) (emphasis added); accord Porter v. Commonwealth, 276 Va. 203, 228, 661 S.E.2d 415, 426 (2008).

The Bar was created in 1938 by the General Assembly as an administrative agency of this Court. Code § 54.1-3910 establishes the Bar as an administrative agency "for the purpose of investigating and reporting violations of rules and regulations adopted by the Court under [Title 54.1, Subtitle IV, Chapter 39, Article 2]." Issues regarding the composition of Board subcommittees do not divest the Bar of this jurisdiction. Objections to such composition are therefore waived if not timely made.

In Barrett, the attorney claimed that the three-judge panel erred in denying his motion to dismiss all charges against him because a member of the subcommittee that certified the charges was "not impartial" and "was biased." 272 Va. at 267, 634 S.E.2d at 344. The attorney raised this issue for the first time before the three-judge panel, and not before the subcommittee, although he was aware of the alleged conflict at that time. Id. We held that the circuit court properly determined that the attorney had waived this issue. Id.

As in Barrett, Green did not object to Richardson's participation on the subcommittees, or to the use of his

17

disciplinary record in this case, in a timely manner.  The subcommittee meetings to which Green objects took place on April 15, 2004, June 16, 2005, June 21, 2005, and February 24, 2006.  As an exhibit to his brief, Green appended notices of these meetings, several of which are certifications.  Each notice clearly states that Richardson was a member of the subcommittee that considered the charges of misconduct against Green.  In addition, in this Court's opinion rendered in Green's previous appeal from disciplinary proceedings, issued on November 2, 2007, we set forth that Richardson was the subcommittee chair at the June 16, 2005, June 21, 2005, and February 24, 2006 subcommittee meetings.  Green, 274 Va. at 780-81, 652 S.E.2d at 120.

Despite Green's knowledge of Richardson's participation in the subcommittee determination that resulted in sanctions included in his disciplinary record, Green did not lodge an objection to Richardson's participation until October 23, 2008, when he moved to set aside the summary order in the Henley and Beavers/Eavey matters.  Prior to Green's October 10, 2008 meeting with counsel, he had "not complained about [the 2004 and 2005 subcommittees] whatsoever."  Green argued on October 23, 2008, for the first time, and before a different panel of the Board than the panels that held the June and August 2008 hearings, that the Board lacked subject

18

matter jurisdiction due to Richardson's participation and the subcommittees' consequently void certifications. Moreover, Green did not object to the introduction of his disciplinary record at the August 2008 hearing when disposition of the charges was made. We hold that the Board correctly decided to overrule Green's motion to set aside the Suspension Order on this basis, as Green's objection was not timely made.

We note that effective January 1, 2007, this Court amended Part 6, § IV in what is now Paragraph 13-14(E) to avoid the need for a separate hearing on whether a subcommittee member has a conflict of interest. Part 6, § IV, ¶ 13-14(E) now clearly provides that "[a]ny member or former member of a District Committee or the Board shall be ineligible to serve in a Disciplinary Proceeding in which . . . [t]he District Committee or Board member previously represented the Respondent."

3. Substitution of Board Members at August 2008 Hearing

Green argues that the Board erred by failing to document the inability of three Board members who sat at the June 2008 hearing to be present at the August 2008 continuation of that hearing. Green contends that the Board was therefore in violation of Part 6, § IV, ¶ 13-18(Q), which provides:

> Whenever a hearing has been adjourned for any reason and one or more of the members initially constituting the quorum for the hearing are

19

unable to be present, the hearing of the matter may be completed by furnishing a transcript of the subsequent proceedings conducted in one or more member's absence to such absent member, or substituting another Board member for any absent member and furnishing a transcript of the prior proceedings in the matter to such substituted member(s).

Green asserts that substantial compliance with what is now Part 6, § IV, ¶ 13-18(Q) was lacking because three of the five Board members on August 22, 2008 had to rely on a transcript of the June 2008 hearing to make their determination, and no valid reason was given for the absence of the original members.

The Bar argues that it fulfilled the requirements of Part 6, § IV, ¶ 13-18(Q) by providing the substituted Board members with a transcript of the June 2008 hearing. According to the Bar, the Board was not required to note or document the reason for the inability of members to be present.

We agree with the Bar. At the August 2008 hearing, the chairman stated, "we do have new members on the panel" and "ask[ed] each member of the panel to identify himself or herself for the record." The new members had been provided a transcript of the June 2008 hearing, as well as a copy of the entire record. Nothing more was required of the Board in order to substitute Board members for the absent members, in compliance with Part 6, § IV, ¶ 13-18(Q).

### 4. Entry of the Suspension Order with the Endorsement of a Designate of the Chairman of the Board

Green argues that the Suspension Order, entered on November 12, 2008, was invalid because it was signed by James Banks, who was neither the Chairman of the Board nor a member on that date.[4] Pursuant to the provision now found in Part 6, § IV, ¶ 13-18(P), "[u]pon disposition of a matter, the Board shall issue the Summary Order. Thereafter, the Board shall prepare the Memorandum Order. A Board member shall prepare the Summary Order and Memorandum Order for the signature of the Chair or the Chair's designee." Banks served as the chair of both the June 2008 and August 2008 panels.

The Bar argues that Green waived this argument by failing to inform the Board of his objection to Banks' authority to enter the Suspension Order. We agree with the Bar. Since Green raises his objection for the first time on appeal to this Court, we will not consider this issue. Rule 5:25.

### 5. Green's Violation of the Rules of Professional Conduct

Green argues that the Board erred in finding any violations of the Rules of Professional Conduct. Part 6, § IV, ¶ 13-18(K) provides that at a disciplinary hearing before the Board, the Bar must present clear and convincing evidence to prove a violation of the Rules.

In the Henley matter, Green contends that the evidence established there was no dispute regarding escrowed funds or fees.  Green argued that funds paid to him by Henley were placed in escrow and withdrawn as earned, and that there was no evidence that Green violated Rule 1.15(a)(2).  Rule 1.15 (a) and its subpart(2) state, in part:

> All funds received or held by a lawyer . . . on behalf of a client . . . shall be deposited in one or more identifiable escrow accounts . . . and no funds belonging to the lawyer . . . shall be deposited therein except as follows:
>
> . . .
>
> (2) funds belonging in part to a client and in part presently or potentially to the lawyer . . . must be deposited therein, and the portion belonging to the lawyer . . . must be withdrawn promptly after it is due.

The Bar argues that the Board had sufficient evidence to find Green's violation of the Rule by clear and convincing evidence.  Henley paid Green $7,500 in cash to represent him, which Green considered a "flat fee."  Green testified that he did not know whether the $7,500 was deposited into his escrow account.  Moreover, the Bar's investigator testified that Green admitted depositing flat fees into his general office account and did not differentiate between a flat fee and a retainer.  The Bar maintains that its Exhibit #20, the account

---

[4] Banks resigned effective June 30, 2008, though his term was not set to expire until 2009.

22

ledger tracking Green's activity on the Henley case, shows a payment and a charge of $7,500 on December 24, 2003. The exhibit does not show periodic withdrawals of fees earned at a rate of $250 per hour, as alleged by Green. Accordingly, the Bar contends the Board correctly ruled that funds were deposited into escrow and withdrawn "immediately" without being earned. Applying the standard of review set forth above, we view the evidence in a manner consistent with the Bar's position and hold that the Board did not err in finding Rule violations in the Henley matter by clear and convincing evidence.

In the Beavers/Eavey matter, Green argues that only Beavers was his client, as she was the only party to the insurance contract with Allstate, and therefore, the Bar's failure to obtain her testimony resulted in insufficient evidence to support a finding that Green violated Rules 1.4 and 1.16, regarding duties owed by lawyers to their clients. Green maintains that the Board erroneously concluded that he represented both Beavers and Eavey against Allstate.

Based on our independent examination of the entire record, viewing the evidence in the light most favorable to the Bar, the evidence shows that Green represented both Beavers and Eavey in the insurance litigation. Green conceded at the June 2008 hearing that he filed the lawsuit for both

23

Beavers and Eavey, and the warrant in debt listed both Beavers and Eavey as plaintiffs. Green also testified about meetings he held with both Beavers and Eavey. Green stated that "[t]hey would come in all the time." We give the Board's factual finding that Green represented both Beavers and Eavey substantial weight, and view it as prima facie correct. Green has failed to sufficiently challenge this finding of fact. We therefore hold that the Board did not err in finding Rule violations in the Beavers/Eavey matter by clear and convincing evidence.

CONCLUSION

For the foregoing reasons, we will affirm the Board's order suspending Green's license to practice law for eighteen months.

Affirmed.