**VIRGINIA:**

In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on Friday, the 17th day of April, 2009.

Timothy M. Barrett,                                              Appellant,

   against             Record No. 081935
                     Circuit Court No. CL08-1511

Virginia State Bar, ex rel.
Second District Committee,                                       Appellee.

Upon an appeal of right from a judgment
rendered by the Circuit Court of York County.

Upon consideration of the record, the briefs, the argument of the appellant in proper person, and the argument of counsel for the Virginia State Bar, ex rel. Second District Committee, the Court is of opinion there is no error in the judgment appealed from.

On December 19, 2007, the Second District Subcommittee of the Virginia State Bar certified two charges of misconduct against Timothy M. Barrett involving violations of Rules 3.1 and 3.4 of the Rules of Professional Conduct and served him with a copy of the certification.  He requested that the case be heard by a three-judge court pursuant to Code § 54.1-3935.  The Virginia State Bar then filed a complaint against Barrett in the Circuit Court of York County, pursuant to Part VI, § IV, Para. 13.I.1.a(1)(b) of the Rules of the Supreme Court.  A three-judge panel (the Panel), consisting of Judge Cleo E. Powell, Judge Robert G. O'Hara, and Judge Arthur B. Vieregg, was designated to hear the case, with Judge Powell presiding.

The matter was heard by the Panel on July 31, 2008.  At the

conclusion of the hearing, the Panel held that the State Bar had failed to prove a violation of Rule 3.4 and dismissed that charge. However, the Panel found that Barrett had violated Rule 3.1, which provides in pertinent part as follows:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.

For the violation of this Rule, the Panel imposed a sanction of "[r]evocation of [Barrett's] license to practice law in the Commonwealth of Virginia, effective immediately."

STANDARD OF REVIEW

In our review of the Panel's decision, we conduct an independent examination of the record, considering the evidence and the inferences fairly deducible therefrom in the light most favorable to the State Bar, the prevailing party below, and we give the Panel's factual findings substantial weight and consider them as prima facie correct. Anthony v. Virginia State Bar, 270 Va. 601, 608-09, 621 S.E.2d 121, 125 (2005). While not given the weight of a jury verdict, the Panel's conclusions will be sustained unless they are not justified by the evidence or are contrary to law. Id. at 609, 621 S.E.2d at 125.

BACKGROUND

At the time of the hearing before the Panel, Barrett was

serving the second of two suspensions of his license to practice law, totaling fifty-one months, for previous violations of the Rules of Professional Conduct (the Rules). The violations occurred in the course of prolonged litigation between Barrett and his former wife, Jill Barrett, in which Barrett represented himself. The litigation commenced with the filing of a divorce case in the Circuit Court of the City of Virginia Beach after the parties separated in 2001 and continued in the Circuit Court of Grayson County during many hearings when Jill Barrett and the couple's six children later moved to her parents' home in that county. Along the way, the couple appeared before the Court of Appeals of Virginia several times, as reflected in unpublished opinions, and Barrett visited this Court several times, including appearances in Barrett v. Virginia State Bar, 269 Va. 583, 611 S.E.2d 375 (2005) (Barrett I), and Barrett v. Virginia State Bar, 272 Va. 260, 634 S.E.2d 341 (2006) (Barrett II).

MOTION TO DISMISS

Barrett also appeared pro se in the hearing before the Panel in the present case. At the commencement of the hearing, he made a motion to dismiss based upon two grounds, (1) because Barrett's license to practice law was suspended, he was a non-lawyer and therefore the "Court lack[ed] jurisdiction to try a non-lawyer under the rules of professional conduct," and (2) because the

3

application of the "rules of professional conduct to a lawyer who represents himself would violate the protection laws of the 14th Amendment to the U.S. Constitution."  The Panel denied the motion to dismiss.

## Jurisdiction

Barrett should be quite familiar with this Court's treatment of the interaction of the Rules and lawyers representing themselves.  In Barrett II, this Court upheld the finding of a three-judge court that Barrett violated Rule 3.1 for "engaging in a frivolous act" in asserting that opposing counsel and Barrett's wife were involved in a romantic relationship. 272 Va. at 270-71, 634 S.E.2d at 347.  Representing himself, Barrett argued that the Rules "apply only when a lawyer is representing a client, not when a lawyer represents himself in a proceeding."  Id. at 267, 634 S.E.2d at 345.  This Court responded as follows:

> Rules of statutory construction provide that language should not be given a literal interpretation if doing so would result in a manifest absurdity.  Applying these Rules in the manner Barrett suggests would result in such an absurdity.  The Rules of Professional Conduct are designed to insure the integrity and fairness of the legal process.  It would be a manifest absurdity and a distortion of these Rules if a lawyer representing himself commits an act that violates the Rules but is able to escape accountability for such violation solely because the lawyer is representing himself.

Id. at 267-68, 634 S.E.2d at 345. (Citations omitted.)  It would also be a manifest absurdity and a distortion of the Rules if they are applied in the manner Barrett suggests here:  A lawyer would be

4

able to escape accountability for a violation of the Rules by using a license suspension as a permit to offend even more.

We hold that a lawyer whose license is suspended is still an active member of the bar and, although not in good standing, is subject to the Rules.  We are not alone in this view.

In the case of In re Morrissey, 305 F.3d 211 (4th Cir. 2002), Morrissey, a lawyer licensed to practice in Virginia, was disbarred by the United States District Court for the Eastern District of Virginia for violations of the Virginia Code of Professional Responsibility occurring while his license was suspended.  Like Barrett here, Morrissey argued that "the three judge . . . panel had no jurisdiction over [him] to inquire into conduct which occurred while [he] was suspended from the practice of law before the district court."  Id. at 215.  The Fourth Circuit affirmed Morrissey's disbarment and stated as follows:

> While none of the federal courts of appeals seem to have considered this matter, and the opinion of no district court on the subject has come to our attention, we note that all of the States which have considered the question have come to the same conclusion, which is that an attorney may be disbarred for conduct which occurred during the time his license to practice law is suspended.

Id. at 216.  The decisions of ten states were cited, including State ex rel Nebraska State Bar Ass'n v. Butterfield, 111 N.W.2d 543 (Neb. 1961).  The Fourth Circuit then stated as follows:

> The distinction between disbarment and suspension made in the Butterfield case is apt, and we adopt it:  "Disbarment is the

severance of the status and privileges of an attorney, whereas suspension is the temporary forced withdrawal from the exercise of office, powers, prerogatives, and privileges of a member of the bar."

Id. (quoting Butterfield, 111 N.W.2d at 546). We also consider the Butterfield distinction apt, and we adopt it and hold that the Panel had jurisdiction to apply the Rules to Barrett in his suspended status.

## Equal Protection

Barrett argues that "applying the Rules of Professional Conduct to [him] while exercising his fundamental and inalienable right to represent himself burdens him with additional strictures that do not bind any other litigant under the exact same circumstances, a burden that is forbidden by the Equal Protection Clause of the 14th Amendment to the U.S. Constitution." Barrett argues further that "while the Equal Protection Clause does not forbid government classifications, it does keep government decision makers from treating differently persons who are in all relevant respects alike."

However, as the Panel noted in its order disbarring Barrett, "an attorney representing himself is not alike in all aspects to a *pro se* non-lawyer litigant by virtue of the fact that the lawyer is a lawyer and is so by choice." Lawyers whose licenses to practice have been suspended are of a class unto themselves and they are subject to the Rules of Professional Conduct while non-lawyers who

6

represent themselves are of an entirely different class and not subject to the Rules.

The important consideration is whether a lawyer whose license to practice has been suspended is treated like other lawyers whose licenses have been suspended.  This Court noted in a previous case involving a claim that an act of the General Assembly violated the Equal Protection Clause that "[a]n act is not invalid if within the sphere of its operation all persons subject to it are 'treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed.' "  Bryce v. Gillespie, 160 Va. 137, 146, 168 S.E. 653, 656 (1933) (quoting Hayes v. Missouri, 120 U.S. 68, 71-72 (1887)); see also Truax v. Corrigan, 257 U.S. 312, 333 (1921)).

Barrett makes no claim that he is being treated unlike other lawyers whose licenses to practice have been suspended. Accordingly, we reject his argument that applying the Rules to him violates the Equal Protection Clause.

RULE 3.1

Barrett is also familiar with the Rule 3.1 prohibition against frivolous assertions not only from his visit here in Barrett II but also from Barrett I, where this Court upheld his violation of the Rule for asserting during his divorce case that he did not know and was not married to Jill Barrett.  In the present case, the issue

7

Barrett is charged with frivolously asserting arose from an order entered March 9, 2006, by the Circuit Court of Grayson County involving the Barretts' children. The order provided that "Jill Barrett have sole legal and physical custody of the children and that Timothy Barrett have visitation with the children once every six weeks either on a Saturday or a Sunday from 8:00 a.m. to 6:00 p.m."[*]

Following entry of the March 9, 2006 order, Barrett repeatedly asserted in the Circuit Court of Grayson County and in the Court of Appeals of Virginia that, because the mother of the children was awarded their "sole legal and physical custody," he is no longer responsible for the payment of any support for them. He makes the same assertion here. Barrett states that "[i]n the case of child support, the whole issue has been subsumed by statute," and "[t]hus, the merits or frivolity of [my] argument rises or falls on the statute, not the Common Law."

Barrett cites Code § 20-124.1, which is entitled "Definitions" and defines the term "[j]oint custody" as meaning "joint legal custody where both parents retain joint responsibility for the care and control of the child and joint authority to make decisions concerning the child." The section defines the term "[s]ole

_____

[*]On October 12, 2005, the custody of one of the six children was placed with the Grayson County Department of Social Services so only the five remaining children were affected by the March 9, 2006

custody" as meaning that "one person retains responsibility for the care and control of a child and has primary authority to make decisions concerning the child."

Barrett also cites Code § 20-108.2 which is entitled "Guidelines for determination of child support" and which in subsection (B) contains extensive schedules for determining the amount of child support which defines the term "Number of children" as meaning "the number of children for whom the parents share joint responsibility and for whom support is being sought." Barrett then argues that "joint legal responsibility" is equated with "joint legal custody" and that, since the March 9, 2006 order vested sole legal custody of the children in his ex-wife, "he had no legal custody and thus, no shared legal responsibility to support any of his children under Section 20-108.2 of the Code of Virginia."

We disagree with Barrett that subsection (B) of Code § 20–108.2 relieves him of responsibility for supporting his children. In our opinion, subsection (B) applies to parents who have joint custody of their children and thus have joint responsibility for their support, with the amount of support being determined from the extensive tables of "MONTHLY BASIC CHILD SUPPORT OBLIGATIONS," which use combined monthly income of the parents and the number of children involved as defined by the language, " 'Number of children' means the number of children for whom the parents share joint legal responsibility and for whom support is being sought."

order.                                              9

On the other hand, when, as here, sole custody is involved, subsection (G) of Code § 20-108.2 applies.  Indeed, subsection (B) expressly recognizes that "subdivision G 1" applies to child support obligation in sole custody cases.  Subsection (G)(1), entitled "Sole custody support," provides as follows:

> The sole custody total monthly child support obligation shall be established by adding (i) the basic monthly child support obligation, as determined from the schedule contained in subsection B, (ii) costs for health care coverage to the extent allowable by subsection E, and (iii) work-related child-care costs and taking into consideration all the factors set forth in subsection B of § 20-108.1.  The total monthly child support obligation shall be <u>divided between the parents</u> in the same proportion as their monthly gross incomes bear to their monthly combined gross income. The monthly obligation of <u>each parent</u> shall be computed by multiplying <u>each parent's</u> percentage of the parents' monthly combined gross income by the total monthly child support obligation.

> However, the monthly obligation of the noncustodial parent shall be reduced by the cost for health care coverage to the extent allowable by subsection E when paid directly by the noncustodial parent.  Unreimbursed medical and dental expenses shall be calculated and allocated in accordance with subsection D.

(Emphasis added.)

Further indication that subsection (B) of Code § 20-108.2 is intended to apply to joint custody cases is provided by the presence in the Code section of subsection (G)(2), which applies to "Split custody support," and subsection (G)(3), which applies to "Shared custody support," with each providing a different means of determining the amount of support.  Thus, the General Assembly has run the full gamut of types of custody, with each treated differently.

Barrett would have us treat him as a stranger to his children

10

and as one whose parental rights have been terminated. But Barrett is not a stranger to his children; the March 9, 2006 order entered by the Circuit Court of Grayson County explicitly granted him the important privilege of visitation with his children. And parental rights may be terminated only by adoption or by following the procedures for terminating such rights outlined in Code §§ 16.1-278.3 and 16.1-283. Neither course has been pursued here.

CONCLUSION

We hold that for Barrett to assert persistently and repeatedly in the Circuit Court of Grayson County and in the Court of Appeals of Virginia that he is no longer required to support his children is completely frivolous, in light of the facts and the law of this case. Accordingly, we will affirm the Panel's order revoking Barrett's license to practice law in this Commonwealth. The appellant shall pay to the appellee thirty dollars damages.

This order shall be published in the Virginia Reports and shall be certified to the said circuit court.

A Copy,

Teste:

Patricia L. Harrington, Clerk

11