COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judges Beales and Decker
Argued at Salem, Virginia

UNPUBLISHED

TIMOTHY M. BARRETT

v.      Record No. 1250-16-3

VALERIE JILL RHUDY MINOR

MEMORANDUM OPINION* BY
CHIEF JUDGE GLEN A. HUFF
OCTOBER 23, 2018

FROM THE CIRCUIT COURT OF THE CITY OF BRISTOL
William N. Alexander, II, Judge Designate

(Timothy M. Barrett, *pro se*, on briefs). Appellant submitting on
briefs.

Steven R. Minor (Elliott Lawson & Minor, on brief), for appellee.

Timothy M. Barrett ("father") appeals the final order entered by the Circuit Court of the

City of Bristol ("trial court") denying a series of motions and setting the amount of attorney's

fees to which Valerie Minor ("mother") is entitled. Father raises twelve assignments of error,

many overlapping and including sub-parts, which can be summarized as follows:

1. The trial court erred by finding it had subject matter jurisdiction to enforce this
Court's mandate on remand from record number 0173-14-3.

2. The trial court erred by obeying this Court's mandate, which father
characterized as unconstitutional.

3. The trial court erred by admitting improper expert testimony.

4. The trial court erred by violating father's due process and equal protection
rights.

5. The trial court erred in determining the reasonable amount of fees.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

6.  The trial court erred by reducing father to an indentured servant of mother.

Finding no error, this Court affirms the trial court's rulings.[1]

## I.  BACKGROUND

Following established principles of appellate review, this Court views the evidence in the light most favorable to mother, the party prevailing below, and grants her the benefit of all reasonable inferences that can be fairly drawn.  Chretien v. Chretien, 53 Va. App. 200, 202, 670 S.E.2d 45, 46 (2008) (citing Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003)).  This standard requires this Court to presume that the trial court's ruling "settled all conflicts in the evidence in favor of the prevailing party."  Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990).  So viewed, the evidence is as follows.

### A.  Procedural history

On April 9, 2010, the Circuit Court of Grayson County entered an order in case number CJ07-17-26 disposing of father's motions to amend a custody order from the Grayson County Juvenile and Domestic Relations District Court ("JDR court").  On April 15, 2010, father appealed that order to this Court, in record number 0753-10-3.  After receiving this Court's opinion, father petitioned the Supreme Court for further review.  On May 22, 2011, while his writ to the Supreme Court appealing record number 0753-10-3 was still pending, father filed a new series of petitions to amend custody of the children in Grayson County JDR court, case

---

[1] Father's reply brief contained an exhibit, consisting of a copy of the cover page of the transcript from the hearing on March 9, 2016, and a copy of the trial court's final order in case number CL15000436.  Mother moved to strike this exhibit because the materials are not part of the record of this case, and "[a]fter the record has been transmitted to this Court . . . and an appeal has been granted, the record on appeal cannot be enlarged except by our award of a writ of certiorari."  Watkins v. Commonwealth, 26 Va. App. 335, 341, 494 S.E.2d 859, 862 (1998) (quoting Godfrey v. Commonwealth, 227 Va. 460, 465, 317 S.E.2d 781, 784 (1984)).  Because the cover page from the transcript is a part of the record of this case, this Court will not strike it.  The order from case number CL15000436 is not part of the record, however, and father did not include it in the joint appendix.  Accordingly, this Court does strike the order from exhibit A that was attached to father's reply brief and does not consider it.

numbers JJ003403 through JJ003406. On August 23, 2011, the Grayson County JDR court issued an order staying all matters related to custody and visitation of the Barrett children pending resolution of father's appeals to the Supreme Court.

The Supreme Court refused father's petition, and this Court issued its mandate in record number 0753-10-3 on October 27, 2011. On January 17, 2012, pursuant to father's motion and because mother had moved to Bristol with the children and her new husband, the Grayson County JDR court transferred father's new petitions to amend custody—cases JJ003403 through JJ003406—to the Bristol JDR court. The Bristol JDR court held a hearing and issued a series of custody and visitation orders on October 3, 2012. Father and mother both appealed those orders to the circuit court ("trial court"). After a series of nonsuits and refiled appeals in the circuit court, father appealed to this Court in record number 0173-14-3. This Court affirmed the circuit court in an unpublished opinion on May 12, 2015. In that opinion, this Court noted that father did not prevail on any of his nineteen assignments of error and awarded attorney's fees to mother. This Court remanded the matter to the trial court to determine an appropriate fee award, including fees for services on remand.

### B. The most recent hearings

Mother filed a motion requesting attorney's fees and attached a number of supporting documents explaining the basis for the amount she was requesting. She also filed a "Motion to Establish a Procedure" for determining the amount of fees to award. By an order issued February 4, 2016, the trial court ordered extensive discovery and required that any expert opinions mother planned to offer must be by live testimony. The trial court held a preliminary hearing on March 9, 2016, to deal with a number of pre-trial motions and a trial to determine the amount of attorney's fees on July 6, 2016. Father moved the trial court to declare void *ab initio*, for lack of subject matter jurisdiction, the Grayson County JDR court's order transferring the

cases to Bristol and every order "based on or flowing from" that order, including this Court's mandate in record number 0173-14-3. He argued that motion extensively at the preliminary hearing, but the trial court denied father's motion. The trial court issued an order on April 14, 2016, denying a number of father's other motions and requiring mother to present an expert witness, other than her own attorney, to testify at the July 6, 2016 trial regarding the fee and expense claim being asserted by mother. Father filed an extensive list of exceptions to that order. Father also filed a number of additional motions after the preliminary hearing but prior to the trial, including another motion to have the prior orders declared void *ab initio* (based on the same reasoning he advanced at the preliminary hearing) and a motion to establish a briefing schedule for that motion. He filed a motion for sanctions regarding discovery, a motion for summary judgment, a motion for a stay so that he could sue the trial judge in federal court, and an extensive motion *in limine* seeking to drastically limit the evidence mother would be allowed to present to justify her fee request.

At the trial on July 6, 2016, father appeared *pro se*, as he has done throughout the years of litigation between the parties. He arrived at the courthouse wearing shorts and a polo shirt. The trial court found on the record that father "is or was a lawyer . . . is highly trained . . . and very intelligent and this [appearing at court inappropriately dressed] is just another ploy of his." The trial court ordered him to leave the courtroom until such time as he was appropriately attired. Moreover, the trial court refused to delay the proceedings, beginning the hearing at 9:45 a.m., with father absent from the courtroom. While father was absent, the trial court decided all of the pre-trial motions, a number of which previously had been argued and ruled on by the trial court, and allowed mother's attorney to make an opening statement.

Mother's attorney, Mr. Minor ("Minor") testified on her behalf, regarding the issue of his fees. While Minor was testifying, the trial court limited his testimony to the amount of

reasonable fees incurred while litigating the appeal in the present case. Minor testified that he was asking for payment for fifty hours of service at $210 per hour, itemized as twenty hours for preparing the brief, twenty hours for handling the appeal, and ten hours for post-remand work on the fee issue itself. Minor testified that he had cut the number of hours he was claiming by a significant amount, noting that of the ten hours he listed for post-remand work at least seven were accounted for by the March 9, 2016 hearing which lasted seven hours by itself. Minor also presented evidence from an informal survey of Virginia appellate attorneys, to establish the reasonableness of the fee rate of $210 per hour.

At approximately 10:15 a.m., as Minor was finishing his testimony, father returned to the courtroom wearing more appropriate dress. Father participated in the ongoing proceedings by raising two objections during the closing moments of Minor's testimony. The trial court gave father the opportunity to cross-examine Minor, limiting the scope of cross to the testimony father heard when he returned to the courtroom. Father repeatedly noted his objection to being barred from the courtroom due to his attire and his objection to the court's decision to limit the scope of his cross-examination. He declined to conduct any cross-examination of Minor.

Mother then called her expert witness, Bristol attorney Edward Stout ("Stout"). Minor began questioning Stout, and father objected that Stout had not been properly disclosed or qualified as an expert. The trial court noted that it had previously ruled that Stout was properly disclosed. Father conducted an extensive *voir dire* of Stout. Father challenged Stout's credibility and qualification as an expert by noting that he had no education or training in economics, vocational counseling, or statistics. Stout was, however, an attorney with thirty-five years of experience practicing in western Virginia. He had received several attorney's fees awards in his own practice, and he was familiar with the rates of other area attorneys in appellate practice. Over father's objection, the trial court qualified Stout as an expert. After the trial

court's ruling, father made several requests to re-argue the issue of Stout's expert qualifications, noted numerous "exceptions," and accused the trial court of denying him his right to be heard.

Father conducted an extensive cross-examination of Stout, attacking the basis of his opinion that Minor's fee request was reasonable. Following Mr. Stout's testimony, mother testified on her own behalf and father cross-examined her. During his cross-examination, father again argued his theory that Minor should be disqualified as mother's attorney because they were married to each other. That issue had been previously decided and affirmed on appeal. Moreover, the trial court ruled that the argument was irrelevant to the question of attorney's fees.

Mother then called father to testify. Father testified that he has no income and that his wife supports him. He claimed that he has no paid employment and has been unable to find paid work. Father admitted that he had travelled recreationally several times in the past few years, although he was unable to recall the details. He admitted to taking pleasure cruises and to taking business trips around the country. Father also acknowledged that he had told his children he expects to live in the Caribbean at some point in the future because his wife plans to move there and has agreed to take him with her. Father concluded his testimony by reiterating that he has no income, no assets, and massive liabilities (including $350,000 in debt). He stated that he has no ability to pay legal fees because he lives off the good will of others who are unwilling to cover any fees arising from this case, so any award of fees over $500 would force him into bankruptcy.

At the close of mother's evidence, father moved to strike her case based primarily on the theory that she had not incurred any legal fees because Minor was representing her *pro bono*. The trial court denied father's motion. After his motion to strike mother's case was overruled, father declined to put on any evidence of his own. The trial court then issued a ruling from the bench. In its ruling, the trial court explained that it determined a reasonable fee award based on the evidence presented including the parties' ability to pay and the amount of work done by

mother's attorney on the case. The court also noted that many of father's arguments were frivolous and found it "ridiculous" that father claimed he could not find paying work. The trial court found mother's claim of fifty hours to be "a ridiculously small" claim for this case and thus "more than reasonable" based on all of the testimony and the applicable law. The trial court awarded mother $10,500 in fees, the total she had asked for. This appeal by husband followed.

## II. ANALYSIS

Father raises twelve assignments of error. With their associated sub-parts, they total twenty-two claims although many are duplicative or overlapping. After accounting for the duplications and overlapping arguments, the assignments of error can be considered in groupings. All are without merit. On appeal "the party seeking reversal . . . bears the burden of demonstrating error on the part of the trial court." Thomas v. Thomas, 40 Va. App. 639, 644, 580 S.E.2d 503, 505 (2003) (citing D'Agnese v. D'Agnese, 22 Va. App. 147, 153, 468 S.E.2d 140, 143 (1996)). Father is unable to meet this burden on any of his assignments of error.

### A. Subject Matter Jurisdiction (Assignment of Error 1)

In his first assignment of error, father asserts that the trial court did not have subject matter jurisdiction over the current case and that all of the orders in the case dating back to 2010, and ultimately this Court's mandate directing the award of attorneys' fees, were void *ab initio* due to lack of subject matter jurisdiction. A challenge to a trial court's subject matter jurisdiction is a question of law that is reviewed *de novo* on appeal. Mayer v. Corso-Mayer, 62 Va. App. 713, 724-25, 753 S.E.2d 263, 268 (2014). To resolve father's challenge this Court must once again clarify the difference between subject matter jurisdiction and the authority of a given court to act in a particular case.

Subject matter jurisdiction is "the authority granted through constitution or statute to adjudicate a class of cases or controversies." Morrison v. Bestler, 239 Va. 166, 169, 387 S.E.2d

753, 755 (1990). Subject matter jurisdiction ripens into "active jurisdiction, the power to adjudicate a particular case upon the merits, only when various elements are present." Ghameshlouy v. Commonwealth, 279 Va. 379, 388-89, 689 S.E.2d 698, 702-03 (2010). Those elements include subject matter jurisdiction, territorial jurisdiction, effective notice, and any other conditions demanded by statute as prerequisites to the court's authority to reach a judgment on the merits. Bd. of Supervisors v. Bd. of Zoning Appeals, 271 Va. 336, 344, 626 S.E.2d 374, 379 (2006). Although subject matter jurisdiction "cannot be waived or conferred on the court by agreement of the parties . . . defects in the other jurisdictional elements generally will be considered waived unless raised in the pleadings filed with the trial court and properly preserved on appeal." Morrison, 239 Va. at 169-70, 387 S.E.2d at 755.

Father alleges that the Grayson County JDR court lacked subject matter jurisdiction over his motions to amend custody when it transferred those cases to the Bristol JDR court and that this lack of jurisdiction renders the transfer order and all subsequent orders in this case— including the mandate of this Court in record number 0173-14-3—void *ab initio*. This Court disagrees because the Grayson County JDR court had statutory jurisdiction over the motions in question and even if it lacked authority to act at the time it transferred the cases, such an error would have rendered the transfer order voidable, not void *ab initio*.

Whether a trial court's order is void or simply voidable "turns on the subtle, but crucial, difference 'between the power of a court to adjudicate a specified class of cases, commonly known as subject matter jurisdiction, and the authority of a court to exercise that power in a particular case.'" De Avies v. De Avies, 42 Va. App. 342, 345, 592 S.E.2d 351, 352 (2004) (*en banc*) (quoting Edwards v. Commonwealth, 41 Va. App. 752, 764, 589 S.E.2d 444, 449-50 (2003) (*en banc*)). "This distinction guards against the *faux* elevation of a court's failure 'to comply with the requirements for exercising its authority to the same level of gravity as a lack of

- 8 -

subject matter jurisdiction.'" Id. (quoting Nelson v. Warden of the Keen Mt. Corr. Ctr., 262 Va. 276, 281, 552 S.E.2d 73, 75 (2001)); see also Morrison v. Bestler, 239 Va. 166, 170, 387 S.E.2d 753, 756 (1990) ("One consequence of the non-waivable nature . . . of subject matter jurisdiction is that attempts are sometimes made to mischaracterize . . . procedural errors as defects in subject matter jurisdiction to gain an opportunity for review of matters not otherwise preserved.").

To determine if an order was issued without subject matter jurisdiction, this Court must "focus on the statutory language delegating power to the courts to decide the issue." De Avies, 42 Va. App. at 346, 592 S.E.2d at 353. Code § 16.1-241 grants each juvenile and domestic relations district court jurisdiction over "all cases, matters and proceedings involving the custody, visitation, [or] support . . . of a child . . . whose custody, visitation or support is a subject of controversy or requires determination." Father filed motions in the Grayson County JDR court to amend the orders dictating custody and visitation with his children, a matter in controversy requiring determination by a court. Because cases regarding custody and visitation of children fall within the "specified class of cases" assigned to JDR courts by statute, the Grayson County JDR court had subject matter jurisdiction over father's case.

Father argues that only one court can have jurisdiction over a case at a time, and while an appeal is pending "the jurisdiction of the trial court from which the appeal was taken must cease." Greene v. Greene, 223 Va. 210, 212, 288 S.E.2d 447, 448 (1982). Furthermore, "[t]he appeal of a final order divests the trial court of authority to modify, amend or change that order until the appellate court has acted." Holden v. Holden, 35 Va. App. 315, 326, 544 S.E.2d 884, 889 (2001). Father misapplies Greene to the facts of this case, however, and improperly conflates statutory subject matter jurisdiction with an individual court's authority to act on a particular case.

In 2010 father appealed the final order of the Grayson County circuit court in case number CJ07-17-26. That appeal, record number 0753-10-3 in this Court, was still pending when, in May of 2011, father filed *new* motions to modify custody in the Grayson County JDR court (case numbers JJ003403 through JJ003406). Despite father's arguments to the contrary, the Grayson County JDR court did have subject matter jurisdiction over those motions at the time of filing, pursuant to Code § 16.1-241. After father filed his new motions, the Grayson County JDR court issued an order staying *all* matters related to custody and visitation of the Barrett children pending resolution of father's appeal to the Supreme Court in record number 0753-10-3. After the Supreme Court denied father's petition, this Court issued its mandate in that case on October 27, 2011. Then, on January 27, 2012, the Grayson County JDR court transferred cases JJ003403 through JJ003406 to the Bristol JDR court. At the time of the transfer, there was no appeal pending on any of those cases, and no decision had been made on their merits. Furthermore, the Grayson County JDR court did not modify, change, or amend any orders related to cases JJ003403 through JJ003406; it simply transferred those cases to a more appropriate forum for resolution on the merits, pursuant to Code § 16.1-243(B)(2). Accordingly, the transfer order was valid and did not undermine any subsequent orders issued by the Bristol JDR court and the trial court.

Even if this Court assumed that the Grayson County JDR court exercised its authority improperly when it transferred the cases in question to the Bristol JDR court, that error would render the transfer order merely voidable, not void *ab initio*. Such an error is best characterized as a "defect[] in the other jurisdictional elements generally . . . considered waived unless raised in the pleadings filed with the trial court and properly preserved on appeal." Morrison, 239 Va. at 169-70, 387 S.E.2d at 755. If father wanted to challenge the validity of the transfer order, he needed to do it at his first opportunity in the Bristol JDR court. "An order issued by a court with

subject matter jurisdiction, even if arguably erroneous and thus voidable . . . governs the parties before the court until vacated by the trial court upon reconsideration . . . or reversed by an appellate court (assuming a timely appeal . . .)," or set aside via the few other statutory remedies available. De Avies, 42 Va. App. at 346, 592 S.E.2d at 353. A voidable order, however, is not subject to collateral attack. Id. Father made no direct challenge in the Bristol JDR court or Bristol circuit court. Only after his initial appeal to this Court was remanded to determine an award of attorney's fees did he challenge the validity of the transfer order and, by extension, all subsequent orders in these cases. Accordingly, any challenge to the validity of the transfer order at this point is waived pursuant to Rule 5A:18.

B. The validity of this Court's mandate to award attorney's fees (Assignment of Error 2)

In his second assignment of error, father alleges that this Court's mandate directing an award of attorney's fees is unconstitutional because this Court lacks the inherent power to award attorney's fees and has no statutory authority to do so. Although he attempts to frame this Court's action as a violation of the Virginia Constitution's separation of powers, at its core father's complaint is with the way the Virginia judiciary has interpreted the Commonwealth's fee award statutes through existing case law. Nonetheless, his claim raises a "question of law that we review de novo on appeal." Vay v. Commonwealth, 67 Va. App. 236, 258, 795 S.E.2d 495, 505 (2017).

Code § 16.1-278.19 allows for courts to "award attorneys' fees and costs on behalf of any party as the court deems appropriate based on the relative financial ability of the parties." This Court has long interpreted that statute to authorize it to award fees and costs on appeal of cases originating in the juvenile and domestic relations district courts, and the Supreme Court upheld that interpretation in Lynchburg Div. of Soc. Servs. v. Cook, 276 Va. 465, 484, 666 S.E.2d 361, 371 (2008). Cook was good law at the time of this Court's original decision to award fees to

- 11 -

wife in record number 0173-14-3, and it remains so to this day. This Court's authority to award fees was further clarified in 2016 with the amendment to Rule 5A:30 adding section (b), which specifically authorized this Court to award fees on appeal "[i]n any case where attorney fees are recoverable under Title 16.1 or Title 20 relating to . . . custody . . . or child support." In short, this Court's decision to award attorney's fees to mother was incident to a statute, Code § 16.1-278.19, as interpreted by this Court and the Supreme Court. Father's claims to the contrary are without merit, despite his efforts to characterize this Court's decision as "assuming a legislative function" in violation of the Virginia and United States Constitutions.

Furthermore, father never questioned this Court's authority to award fees when record number 0173-14-3 was before this Court on the merits, a fact which father admitted during the hearing on March 9, 2016, in the trial court. The law of the case doctrine dictates that "[w]here there have been two appeals in the same case, between the same parties, and the facts are the same, nothing decided on the first appeal can be re-examined on a second appeal." Rowe v. Rowe, 33 Va. App. 250, 262, 532 S.E.2d 908, 914 (2000). By awarding fees to mother in the first appeal, this Court logically determined that it had the authority to award such fees. No facts have changed since the first appeal, so that determination is binding on the parties on this second appeal.

C. Admission of expert testimony (Assignment of Error 9)

In father's ninth assignment of error, he asserts that the trial court violated his due process rights by admitting the testimony of mother's expert witness on the amount of attorney's fees. Although he states this assignment of error as a due process violation, father's argument is simply that the witness should not have been qualified and the testimony should not have been admitted. Accordingly, this Court reviews the trial court's decision to admit the testimony.

### 1. Standard of Review

"It is well established that the admissibility of expert testimony is within the sound discretion of the trial court, and that court's decision will not be disturbed absent an abuse of discretion." Patterson v. Commonwealth, 3 Va. App. 1, 11, 348 S.E.2d 285, 291 (1986). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Tynes v. Commonwealth, 49 Va. App. 17, 21, 635 S.E.2d 688, 689 (2006)). "However, to the extent the trial court makes an error of law in the admission of evidence, 'an abuse of discretion occurs.'" Abney v. Commonwealth, 51 Va. App. 337, 345, 657 S.E.2d 796, 800 (2008) (quoting Bass v. Commonwealth, 31 Va. App. 373, 382, 523 S.E.2d 534, 539 (2000)).

### 2. Merits

Father asserts that Stout was not qualified to render an expert opinion, he failed to state his opinion to a reasonable degree of professional certainty, and his opinion failed to consider necessary variables and was based on unproven assumptions. This Court finds father's claims to be without merit.

"The sole purpose of permitting expert testimony is to assist the trier of fact to understand the evidence presented or to determine a fact in issue." Commonwealth v. Allen, 269 Va. 262, 274, 609 S.E.2d 4, 12 (2005). As a general rule, "a witness is qualified to testify as an expert when the witness possesses sufficient knowledge, skill, *or experience*" regarding the subject matter in question. Id. (emphasis added). "[A]ll that is necessary for a witness to qualify as an expert is that the witness have sufficient knowledge of the subject to give value to the witness's opinion." Id. (quoting Velazquez v. Commonwealth, 263 Va. 95, 103, 557 S.E.2d 213, 218 (2002)). "Determining whether an adequate foundation has been laid for the admission of an expert opinion is an exercise of the trial court's discretion, to be made in light of all the testimony produced." Smith v. Commonwealth, 265 Va. 250, 254, 576 S.E.2d 465, 468 (2003).

Stout testified that he was an attorney with thirty-five years of experience in practice in western Virginia. He explained that he had done some appellate work and was acquainted with a number of Virginia appellate attorneys and familiar with their billing rates. Stout also testified that he had litigated and won several attorneys' fees award cases in federal court, including one award of $250 per hour. As a basis for his opinion, Stout cited his own experience as well as the fact that he had reviewed affidavits from five different appellate attorneys from different areas of Virginia answering mother's questions about reasonable hourly rates for appellate attorneys. Finally, Stout testified that he held his opinion with a reasonable degree of professional certainty.

This Court finds that the trial court acted within its sound discretion when it qualified Stout as an expert. His experience, knowledge, and expertise as an attorney are more than adequate to give value to his opinion. Furthermore, his testimony was helpful to the factfinder in determining the critical fact at issue in this case—a reasonable amount of attorney's fees—and his opinion was based on sufficient facts known by him directly, or on data he was able to review prior to the hearing. See Code § 8.01-401.1 ("In any civil action any expert witness may give testimony and render an opinion or draw inferences from facts . . . or data made known to . . . such witness at or before the hearing . . . . The facts . . . relied upon by such witness in forming an opinion . . . need not be admissible in evidence."). Accordingly, this Court finds no error in admitting Stout's testimony.

D. Father's due process/equal protection rights (Assignments of Error 3-5, 7, 8, and 12)

In a number of his assignments of error, father invokes his due process and equal protection rights under the Fourteenth Amendment. These assignments all address, in one way or another, the conduct of the hearings in the trial court and father's claims that he has been treated unfairly by the trial court. "The conduct of a trial and the imposition of measures necessary to . . . maintain decorum is left to the sound discretion of the trial court." Martin v.

- 14 -

_Commonwealth_, 11 Va. App. 397, 405, 399 S.E.2d 623, 627 (1990).  As with any similar matter, "unless it affirmatively appears that this discretion has been abused, [an appellate court] will not disturb the trial court's ruling thereon."  _Williams v. Commonwealth_, 4 Va. App. 53, 77, 354 S.E.2d 79, 92 (1987) (quoting _Mundy v. Commonwealth_, 161 Va. 1049, 1064, 171 S.E. 691, 696 (1933)).

### 1.  Due Process in the hearing

Father alleges that the trial court deprived him of due process when it ordered him to leave the courtroom because of his attire and continued the proceedings without him.  Father claims the trial court violated his due process rights by ruling on his motions when he was not in the courtroom and by limiting his cross-examination of mother's attorney to the testimony he heard after he returned.  Procedural due process "guarantees a litigant the right to reasonable notice and a meaningful _opportunity_ to be heard."  _Etheridge v. Medical Center Hospitals_, 237 Va. 87, 97, 376 S.E.2d 525, 530 (1989) (emphasis added).  Contrary to father's claims, "[t]he procedural due process guarantee does not create constitutionally protected interests; rather, it provides procedural safeguards against government's arbitrary deprivation of certain interests." _McManama v. Plunk_, 250 Va. 27, 34, 458 S.E.2d 759, 763 (1995).  This Court finds that the trial court afforded father the necessary due process protections and as such did not deprive him of his property in an arbitrary manner.

"When procedural due process respecting deprivation of a property interest is challenged, the [United States] Supreme Court pursues a two-step inquiry."  _Klimko v. Virginia Employment Com._, 216 Va. 750, 754, 222 S.E.2d 559, 563-64 (1976) (citations omitted).  The first is whether the interest in dispute is actually a property interest subject to due process guarantees, the second is "whether the procedures . . . applied are sufficient to satisfy the due process 'fairness' standard."  _Id._; _see also_ _Va. Dep't of Corr. v. Compton_, 47 Va. App. 202, 221, 623 S.E.2d 397,

406 (2005) (finding that because a terminated employee had a protected interest, this Court "must next determine whether VDOC provided adequate procedural safeguards *under the circumstances of this case*" before terminating him (emphasis added)).  There is no dispute that father has a protected property interest in the $10,500 the trial court ordered him to pay to mother.  The only question is whether, given all the circumstances of this case, the trial court provided fair procedural protections "before any binding order [was] made affecting [his] rights to . . . property."  McManama, 250 Va. at 34, 458 S.E.2d at 763.

The United States Supreme Court has repeatedly held that "due process is flexible and calls for such procedural protections as the particular situation demands."  Morrissey v. Brewer, 408 U.S. 471, 481 (1972).  Courts must balance three factors when determining what process is necessary in any situation:  First, the private interest that will be affected; second, the risk that the procedure employed might cause an erroneous deprivation of the interest, and any probable value of additional procedural safeguards; and third "the Government's interest, including . . . the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews v. Eldridge, 424 U.S. 319, 335 (1976); see Dixon v. Love, 431 U.S. 105, 114 (1977) (applying these factors in a driver's license suspension case); see also Jackson v. W., 14 Va. App. 391, 412, 419 S.E.2d 385, 397 (1992) (applying the factors and explaining that "[u]nder this balancing test, we weigh the competing interests of the government and the private party and consider the value and cost of requiring additional procedures").

The private interest affected in this case is father's property interest in the money he was ordered to pay to mother.  This Court must ensure that the trial court afforded sufficient process to minimize the risk of an erroneous deprivation of that interest, while also considering the Commonwealth's interest in avoiding the fiscal and administrative burdens that would arise from providing additional protections.

- 16 -

A key aspect of father's claim that the trial court deprived him of due process arises from the fact that he was ordered to leave the courtroom due to his attire. At the July 6, 2016 trial to determine the amount of attorney's fees, father appeared in the courtroom wearing shorts and the trial court ordered him to leave until properly attired. "The trial court has the duty and the authority, in the exercise of sound discretion, to require persons attending court to dress in a manner appropriate to their functions and consistent with the publicity and dignity of the courtroom." Johnson v. Commonwealth, 19 Va. App. 163, 165, 449 S.E.2d 819, 820 (1994). Father's attire was without question inappropriate and an affront to the dignity of the court. As a former attorney and a well-educated, experienced *pro se* litigant, father had appeared in circuit courts throughout the Commonwealth. Despite his protestations to the contrary, father should have known better than to appear in court wearing shorts. A *pro se* litigant is "no less bound by the rules of procedure and substantive law than a defendant represented by counsel." Townes v. Commonwealth, 234 Va. 307, 319, 362 S.E.2d 650, 657 (1987). The trial court's order was correct, and father's absence from the courtroom was thus an absence of his own making, for which he bears responsibility just as if he had failed to appear at all. The trial court noted, "you would have had an opportunity [to be heard] had you been here, but you were not here for your own fault."

While father was out of the courtroom, the judge denied of a number of father's pre-trial motions. The trial court determined that none of the motions was well-grounded in law and thus they could be decided on the pleadings, without further oral argument. Like other trial-management decisions, such decisions are within the sound discretion of the trial court. Martin, 11 Va. App. at 405, 399 S.E.2d at 627. The record shows that the trial court considered each of the motions individually and articulated its reasons for denying each one. None of the trial court's decisions was arbitrary, and nothing in the record indicates an abuse of discretion.

- 17 -

The trial court also heard testimony from mother's attorney while father was out of the courtroom, and upon his return, the trial court limited his cross-examination of mother's attorney to the testimony he heard. As a general rule, a trial court may limit the scope of cross-examination and that decision is subject to review only for abuse of discretion. Stewart v. Commonwealth, 10 Va. App. 563, 567, 394 S.E.2d 509, 512 (1990). A trial court abuses its discretion when a litigant's case is prejudiced by the court's decision to limit the scope of cross-examination. See Norfolk & W. R. Co. v. Sonney, 236 Va. 482, 488, 374 S.E.2d 71, 74 (1988) (finding that the trial court "abused its discretion and prejudiced the railroad" by refusing to allow cross-examination intended to show the bias of a witness).

The trial court knew of father's propensity to file frivolous litigation and his engaging in delaying tactics. It noted on the record the fact that father had been appropriately dressed at past hearings, and concluded that "this is just another ploy of his for what reason I have no idea." The trial court recognized the importance of continuing the proceedings in order to avoid further delays and the associated expense to both mother and the court. Father's absence was of his own making and amounted to only thirty minutes out of a four-hour trial. Mother presented three more witnesses, and father was given ample opportunity to cross-examine each one. He did so vigorously, and the trial court afforded him significant leeway in his cross-examination. Under these unique circumstances, this Court finds that the trial court was within its sound discretion to limit father's cross-examination of mother's attorney, because there was no prejudice to father's case.

Furthermore, the trial on July 6, 2016 was only the last of a series of hearings the trial court held to decide the ultimate question of the amount of fees to be awarded pursuant to this Court's mandate. The trial court held a series of conference calls, a seven-hour hearing on

pre-trial motions and discovery questions, and a trial on the merits that lasted almost four hours. Father was allowed to demand significant discovery on the question of exactly how much time mother's attorney spent on the case, and the trial court required mother to put on expert testimony at trial despite the fact that such testimony is often handled on affidavits. See Tazewell Oil Co. v. United Virginia Bank, 243 Va. 94, 112, 413 S.E.2d 611, 621 (1992) (upholding a fee award where the entire decision was based on affidavits). Over the course of the proceedings, father filed and argued—either by phone, in writing, or in person—at least a dozen motions. Some were merely procedural (a motion for a 30-day stay before trial) while others were substantive (his motion to declare this Court's mandate and other orders void *ab initio*). Father had ample opportunity to dispute the amount of the fee award and even attacked the proceedings themselves via a jurisdictional claim.

Against this extensive series of written motions and oral arguments both in person and by phone, this Court must weigh the judiciary's interest in resolving this case with minimal additional expense to the parties and the courts. Father's history of frivolous litigation, harassing opposing counsel, and other misconduct is well documented in case law. See, e.g., Barrett v. Va. State Bar, 269 Va. 583, 594, 611 S.E.2d 375, 380 (2005) (imposing discipline on father while he was still an attorney for, *inter alia*, harassing opposing counsel by personal attacks, threatening opposing counsel with disciplinary complaints in an effort to gain advantage in a civil matter, and filing frivolous pleadings[2]); Barrett v. Va. State Bar ex rel. Second Dist. Comm., 277 Va. 412, 419, 675 S.E.2d 827, 831 (2009) (upholding the decision of a three-judge panel to disbar

---

[2] Elsewhere in that opinion, father is quoted as telling his wife, at the start of their divorce proceedings in 2001:

- 19 -

father for continuing to file frivolous pleadings in violation of Rule 3.1 while his law license was suspended for, *inter alia*, filing frivolous pleadings). The trial court was well aware of father's history and commented on it at the beginning of the March 9, 2016 hearing in an effort to get the two parties to at least settle on the legal fees question without further litigation. Furthermore, mother's attorney testified to the fact that father had filed or asked others to file forty-nine separate actions against mother just since 2014.

In light of this history, the fact that father's claims in this case were wholly without merit, and in an effort to husband the resources of the judiciary and the other parties to the case, the trial court made the unusual decision to continue the July 6, 2016 hearing in father's absence. This Court affords a high level of deference to a trial court's decision on matters of trial management. Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005). This Court will find an abuse of discretion "only 'when reasonable jurists could not differ'" as to the proper decision. Brandau v. Brandau, 52 Va. App. 632, 641, 666 S.E.2d 532, 537 (2008) (quoting Robbins v. Robbins, 48 Va. App. 466, 482, 632 S.E.2d 615, 623 (2006)). A review of the circumstances in this case point to no such abuse of discretion. The trial court provided adequate process to avoid an erroneous deprivation of father's property interest. Father's proposed remedy on appeal—a new trial with a new judge—would result in significant and unnecessary expense to all parties

---

> I am prepared for the fight . . . I will avail myself of every
> substantive law and procedural and evidentiary rule in the books
> for which a good faith claim exists. This means that you, the kids
> and your attorney will be in Court in Virginia Beach weekly . . . .
> You are looking at attorney's expenses that will greatly exceed
> $10,000 . . . . I will also appeal . . . every negative ruling.

269 Va. at 589, 611 S.E.2d at 378.

involved. Accordingly, this Court finds the process afforded father by the trial court was fair and satisfied the requirements of the Fourteenth Amendment.

## 2. The trial court's alleged bias against father

Father alleges a host of actions by the trial court are evidence of the court's bias against him and violations of his rights to equal protection under the Fourteenth Amendment. In total, father points to at least thirty-two separate acts by the trial court in which he claims that the trial court "failed to treat like litigants alike" or in some other way manifested bias against him, thereby denying him his right to an impartial tribunal. This Court finds these claims meritless.

A judge's duty to be impartial when conducting a hearing is defined in Canon 3 of Virginia's Canons of Judicial Conduct. A judge "shall perform judicial duties without bias or prejudice," Canon 3B(5), and shall "accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law," Canon 3B(7). Furthermore, "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." Canon 3E(1). A judge must "exercise reasonable discretion" to determine if he or she possesses any bias against a litigant such that a fair trial would be impossible, or if his or her impartiality might reasonably be called into question. Justus v. Commonwealth, 222 Va. 667, 673, 283 S.E.2d 905, 908 (1981). "Judges are presumed to be aware of the provisions of Canon 3, and their decisions will not be disturbed absent an abuse of . . . discretion." Davis v. Commonwealth, 21 Va. App. 587, 591, 466 S.E.2d 741, 743 (1996). A litigant alleging bias on the part of a judge "has the burden of proving the judge's bias or prejudice." Commonwealth v. Jackson, 267 Va. 226, 229, 590 S.E.2d 518, 519-20 (2004).

A careful review of the record reveals that each incident alleged by father as evidence of bias is more accurately described as a ruling against him or as an act of a trial judge trying to maintain control of his courtroom. The trial judge maintained control, and maintained his

composure, in the face of father's repeated efforts to delay the proceedings. For example, the trial court granted father significant leeway in his *voir dire* of Mr. Stout, and his cross-examination, over numerous objections by mother's attorney. Only after father became belligerent toward both the witness and the court did the court admonish father or rule against him regarding his conduct of the cross-examination. If adverse rulings "were the criterion of prejudice, no rulings could ever be made which a party opposes." Stamper v. Commonwealth, 228 Va. 707, 714, 324 S.E.2d 682, 686 (1985).

The record shows that the trial court issued rulings favoring and disfavoring both sides throughout the proceedings. The trial court denied several of father's pre-trial motions and also denied mother's motion to establish a procedure for determining the fees. The court sustained several of father's objections during the trial, and overruled several of mother's. Even while father was absent from the courtroom, the trial court ensured that mother's attorney limited his testimony to facts relevant to the question at hand, the amount of attorney's fees to award. The trial court specifically prohibited mother's attorney from testifying about other litigation between the parties. Taken as a whole, the conduct of the trial court reflected a strong commitment to fair dealing between the parties in contentious litigation. Father presents no other evidence sufficient to prove that the trial judge manifested bias or prejudice against him. In the absence of such evidence, this Court finds that father received a fair hearing before an impartial tribunal, which satisfied his rights to equal protection under the law.

E. The amount of the fee award (Assignments of error 2, 10, and 11)

In his second, tenth, and eleventh assignments of error, father claims the trial court violated his due process rights by "ignoring the law and facts," and penalizing him for "exercising his . . . due process rights in opposition to the taking of his property." Despite his claim that these are constitutional issues, they are better characterized as a dispute over the

amount of fees awarded to mother. Put simply, father argues that any fee award over $500 is unreasonable.

"An award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987). Code § 16.1-278.19 states that "the court may award attorneys' fees and costs . . . as the court deems appropriate based on the relative financial ability of the parties." "The key to a proper award . . . is reasonableness under all the circumstances." Joynes v. Payne, 36 Va. App. 401, 429, 551 S.E.2d 10, 24, (2001). When determining a reasonable fee, "the fact finder should consider such circumstances as the time consumed, the effort expended, the nature of the services rendered, and other attending circumstances." Mullins v. Richlands Nat'l Bank, 241 Va. 447, 449, 403 S.E.2d 334, 335 (1991).

Father provides no legal authority to support his claim that this Court's award of post-remand fees constitutes a penalty for "exercising his constitutional rights," so this Court need not address it. Rule 5A:20(e). Father also argues that because mother's attorney is her husband and is representing her *pro bono* on the appeal, she has not "incurred" any fees at all and thus is not entitled to an award. However, the fact that mother's attorney represents her *pro bono* does not prohibit a fee award. No less an authority than the United States Supreme Court has said, reviewing a fee award in a civil rights case, that "where there are lawyers or organizations that will take a plaintiff's case without compensation, that fact does not bar the award of a reasonable fee" as long as the trial court considers the other factors relevant to the situation. Blanchard v. Bergeron, 489 U.S. 87, 94 (1989). In light of this reasoning from the United States Supreme Court, this Court finds that it is not an abuse of discretion to allow an award of attorneys' fees when a litigant is represented by *pro bono* counsel, so long as other relevant factors are considered in making the award.

- 23 -

In this case, it is clear from the record that the trial court did consider other relevant factors, including the relative ability of the parties to pay, the effort expended, the nature of the services rendered, and other attending circumstances such as the results obtained, the experience and ability of the lawyer involved, and the customary fee for similar legal services. Ruling from the bench, the trial court noted the significant amount of litigation in this case alone, which has generated a "tremendous amount of legal work" including "thousands of pages of briefs and motions." It noted this Court's characterization of father's previous appeal as "frivolous" and the fact that father's previous appeal failed on all nineteen of its allegations. The trial court credited the expert testimony it heard regarding the reasonableness of the number of hours claimed and the hourly rate. The trial court's statements from the bench show that it considered sufficient relevant factors to justify its decision, so this Court finds that the trial court acted within its sound discretion to award fees to mother despite the fact that her attorney was working *pro bono*.

Father makes a number of additional assertions that the trial court ignored the law and facts when determining the size of the fee award. Most of these assertions revolve around father's claim that he has no income, no assets, and no ability to pay any fees, so any award over $500 will drive him into bankruptcy. In contrast, father asserts, mother has both income and assets which enable her to pay while he cannot. Because Code § 16.1-278.19 requires consideration of the parties' ability to pay, father argues that any award of fees levied against him violates the statute. This Court disagrees.

Virginia law makes clear that "the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*) (quoting Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598,

- 24 -

601 (1986)). Father testified to his significant debt and inability to find paid work, in contrast to mother's steady income and low debt. Father stated that he lives off the good will of other people, who would be unwilling to help him pay any fee award. Father also admitted, however, that he has been on two international cruises, travels across the country for business, and expects to live in the Caribbean at some point in the future using resources from his wife's inheritance. The trial court was free to reject father's testimony that he had no ability to pay and to give great weight to mother's testimony that her income was not sufficient to pay for the representation necessary to defend herself against father's endless litigation. This Court finds that the trial court did not "ignore" the evidence when it simply exercised its discretion to credit mother's testimony and evidence over father's.

This Court also finds that the trial court did not "ignore" the law in reaching its conclusions based on the evidence before it. "On appeal, a ruling is entitled to a presumption of correctness; a trial court is presumed to have known and properly applied the law, absent clear evidence to the contrary." Hodges v. Dep't of Soc. Servs, Div. of Child Support Enf't, 45 Va. App. 118, 141, 609 S.E.2d 61, 72 (2005). Father presents no "clear evidence" that the trial court ignored the law, and his attempts to do so frequently misapply case law.

As only one example, father cites to Hiss v. Friedberg, 201 Va. 572, 112 S.E.2d 871 (1960), to support his claim that the trial court considered improper factors when determining the fee award. In Hiss, the Virginia Supreme Court ruled that "attorneys' fees and other expenses incurred in former litigation between the same parties [are not] recoverable in a subsequent action." 201 Va. at 577, 112 S.E.2d 875. In this case, the trial court observed on several occasions that there had been significant litigation between the parties over the years. Father cites these statements as evidence that the trial court *based its calculation of the fee award* on prior litigation, in violation of the rule in Hiss. Father's argument is baseless because mother's

claim included *only* hours that her attorney worked on the current litigation.  This Court does not assume that the trial court made decisions without considering applicable law, because this Court "will not fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied."  Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977).

The trial court considered all relevant factors to determine an appropriate fee award, including the parties' ability to pay in accordance with Code § 16.1-278.19.  It properly applied relevant case law to the facts, and father's arguments to the contrary are without merit.  This Court finds that the amount of the fee award was within the trial court's sound discretion and there is no reason to overturn it.

### F.  Father's Thirteenth Amendment claim (Assignment of Error 6)

In his sixth assignment of error, father claims that by ordering him to pay attorneys' fees the trial court has forced him "to work to pay off a debt to another" in the face of legal sanction, thus rendering him an involuntary servant of mother in violation of the Thirteenth Amendment's prohibition against slavery.  Father bases this claim on the fact that in its ruling from the bench, the trial court observed that father is well educated and could get a job if he wanted to, in order to meet his obligation to pay.

In the few cases where Virginia courts addressed claims of this type, they were universally found to be without merit.  See, e.g., Peake v. Peake, No. 0262-15-3, 2015 Va. App. LEXIS 281, at *15 (Va. Ct. App. Oct. 6, 2015) (holding that appellant's spousal support obligation did not amount to involuntary servitude).  Only when an individual was imprisoned for failure to pay court costs did the Supreme Court actually find a violation of the Thirteenth Amendment.  Wright v. Matthews, 209 Va. 246, 249, 163 S.E.2d 158, 160 (1968).

Once again, this Court does not "fix upon isolated statements of the trial judge" and then use those out-of-context statements as evidence of error. Yarborough, 217 Va. at 978, 234 S.E.2d at 291. Contrary to father's claim, the trial court's comment regarding his ability to get a job does not constitute a court order forcing him to work against his will. This Court finds father's Thirteenth Amendment claim to be without merit because it is based on an absurd interpretation of a single statement by the trial court, taken out of context in an effort to create a constitutional issue where none exists.

### G. Frivolous litigation, final judgment

Father has again presented this Court with an appeal raising over twenty claims, and he prevails on none of them. Many are so meritless that they do not even warrant individual discussion. Father's history of frivolous litigation is well documented. After being disciplined by the Virginia State Bar for filing frivolous pleadings, Barrett, 269 Va. at 594, 611 S.E.2d at 380, father was disbarred for continuing his pattern of frivolous litigation against his former wife, Barrett, 277 Va. at 419, 675 S.E.2d at 831. Father has continued that trend as a *pro se* litigant, as this Court noted in Barrett v. Minor, No. 0173-14-3, 2015 Va. App. LEXIS 165, at *21 (Va. Ct. App. May 12, 2015) ("In general, his arguments are frivolous, misstate the law, and misread statutes.").

Throughout this case, father misapplies the law and selectively interprets facts, claiming violations of both the state and federal constitutions where none actually exists. The only issue on remand was the amount of attorney's fees to award, a question often resolved in the trial court with a few routine filings. Instead, father's zeal for litigation on even such a simple question necessitated multiple hearings, hundreds of pages of briefing and motions, and over three years of delay. To avoid any repetition of this abuse of the judicial process, this Court exercises its authority pursuant to Rule 5A:30(b)(2) and awards mother additional attorney fees for the instant

appeal, in the amount of $6,300 as supported by the affidavit requested by this Court and submitted by mother's counsel. <u>See</u> Rule 5A:30(b)(2) ("the Court of Appeals may award to a party who has made such request, all of their attorney fees, or any part thereof, *or* remand the issue to the circuit court . . . for a determination thereof" (emphasis added)). Such award of attorney fees is a judgment immediately due and payable and is in addition to those determined by the trial court and affirmed in this appeal.

III. CONCLUSION

For the foregoing reasons, this Court affirms the trial court's ruling and awards $6,300 in additional fees for the instant appeal.

<u>Affirmed, plus award of fees.</u>